**Hung NGUYEN, Plaintiff, Appellant,**

v.

**Shirley S. CHATER, Defendant, Appellee.**

No. 98–1302.

United States Court of Appeals, First Circuit.

Submitted Aug. 10, 1998.

Decided March 26, 1999.

Ronald B. Eskin on brief for appellant.

Donald K. Stern, United States Attorney, and Anita Johnson, Assistant U.S. Attorney, on brief for appellee.

Before TORRUELLA, Chief Judge, BOUDIN and LIPEZ, Circuit Judges.

PER CURIAM.

Claimant Nguyen applied for social security disability benefits after injuring his back at work in January, 1993. Following a March, 1995 hearing, an administrative law judge (ALJ) found that although claimant's severe lumbar and cervical disc-disease prevented him from returning to his vocation of welder-carpenter, he retained the functional capacity for sedentary work and exhibited no significant exertional or non-exertional impairments. The ALJ then applied the Medical Vocation Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the Grid), to find that the national economy offered claimant substantial employment; *ergo*, he was not disabled. The Appeals Council and the district court sustained the decision, whereupon claimant appealed to this court. Claimant argues that the ALJ erred in assessing his residual functional capacity by ignoring medical evidence, substituting his judgment for that of medical professionals and improperly discounting the opinion of a treating physician.[1] We agree. We vacate the judgment of the district court with instructions to remand for further proceedings.

---

1. Claimant also argued that the ALJ improperly neglected his severe mental disorder. The argument lacks merit. Claimant neither alleged nor produced evidence of any such mental condition.

## I.

The record shows that claimant was initially diagnosed by an occupational health clinic with acute lower-back strain. Despite prescribed rest and medication, he soon experienced peripheral numbness and radiating pain, triggering a series of diagnostic tests. In February, the clinic ordered a magnetic resonance scan (MRI) which revealed some lumbar-disc degeneration and bulging, but no robust herniation. A follow-up surgical consultation disclosed no nerve deficits.

In May, 1993, Neurologist Mahoney, who apparently assumed primary responsibility for claimant's care, ordered another MRI which revealed diffuse narrowing of the lumbar spine, aggravated by disc disease. It also revealed central disc herniation, although Dr. Mahoney and Dr. Beers, the performing radiologist, disagreed about the magnitude of the herniation. At any rate, Dr. Mahoney found claimant utterly incapacitated and referred him to Dr. Selland for a surgical consultation. Upon physical examination, Dr. Selland agreed that claimant was incapacitated and scheduled a myelogram. The doctors agreed that the myelogram was unremarkable, precluding surgery.

By August, Dr. Mahoney reported that claimant's condition had further deteriorated and he ordered another MRI to evaluate treatment alternatives. Dr. Beers reported marked narrowing of the lumbar spinal-canal with potential nerve compression. Dr. Mahoney concluded that the MRI revealed a congenitally small, lumbar spinal-canal, aggravated by secondary disc-protrusions, and that the findings could explain claimant's severe symptoms. In September, 1993, Dr. Beers performed a cervical MRI and reported bulging discs with mild pressure on the cervical cord and diffuse narrowing of the cervical canal, within the lower limits of normal.

On October 21, 1993, Dr. Mahoney admitted claimant to the hospital for 72 hours after he presented with incapacitating pain. Dr. Mahoney reported that while claimant exhibited no major, peripheral, neurological abnormalities, he was debilitated by pain attributable to congenital narrowing of the lumbar spine, aggravated by bulging discs. This remained Dr. Mahoney's opinion through the date of his last report, April, 1994, despite numerous treatments, including, rest, medications, physical therapy, a back-brace and spinal blocks.

## II.

█ In the opinion, the ALJ found that claimant had discharged his burden of establishing that a severe impairment prevented him from resuming his former occupation. Accordingly, the ALJ proceeded to the determination of claimant's residual functional capacity. 20 C.F.R. §§ 404.1520 and 404.1561. Since, following the medical advisor, the ALJ conceded that claimant's condition was painful, his determination of residual functional capacity had to take into account the severity of claimant's pain and the extent to which it impeded his ability to work. 20 C.F.R. § 404.1529(a) and (b); *Da Rosa v. Secretary of Health and Human Services,* 803 F.2d 24, 25 (1st Cir.1986). In making this assessment, the ALJ was required to consider evidence in addition to medical tests, including, *inter alia,* claimant's statements, opinions of treating physicians, reports of claimant's activities and claimant's course of treatment. 20 C.F.R. § 404.1529(c).

The ALJ found that claimant suffered no significant exertional or non-exertional impairments which limited his capacity to perform the full range of sedentary work. He reasoned that the reports of both Dr. Mahoney and claimant concerning the severity of claimant's pain and inability to remain seated were exaggerated. Specifically, claimant could satisfy his need to change position with regularly-scheduled breaks. The ALJ then invoked the Grid to prove that claimant was not disabled.

### III

■■ Our review is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *Manso–Pizarro v. Secretary,* 76 F.3d 15, 16 (1st Cir.1996)(*per curiam* ). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Da Rosa v. Secretary,* 803 F.2d 24, 26 (1st Cir.1986)(*per curiam* ); *Ortiz v. Secretary of Health and Human Services,* 955 F.2d 765, 769 (1st Cir.1991). Employing these standards, we hold that errors of law and a dearth of evidence invalidated the ALJ's finding that claimant retained the residual functional capacity to perform sedentary work and exhibited no significant exertional or non-exertional impairments.

■■ Dr. Mahoney repeatedly rendered the opinion that claimant was incapacitated by severe pain. The ALJ rejected the opinion as inconsistent with "actual findings made on exam and the degree of treatment needed," the lack of "recent treatment,"[2] and some unspecified aspect of the entire record. This reasoning lacks proper support in the record. With respect to medical findings and treatment, Dr. Mahoney's ultimate opinion that claimant suffered severe pain attributable to spinal stenosis was uncontroverted.[3] Although his initial May diagnosis of frank herniation may have been controversial, no medical opinion in the record challenged his ultimate diagnosis.[4] The medical advisor never addressed, nor did the ALJ mention, either Dr. Mahoney's ultimate opinion or the related August and September MRIs.[5] Similarly, no medical opinion in the record suggested that claimant's course of treatment was incommensurate with his purported ailment. The ALJ was not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion. *Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir.1994); *Nieves v. Secretary of Health and Human Services,* 775 F.2d 12, 14 (1st Cir.1985); *Suarez v. Secretary of Health and Human Services,* 740 F.2d 1 (1st Cir.1984)(per curiam).

■ The Commissioner suggests that despite Dr. Mahoney's opinion, the medical record supported the ALJ's determination that claimant was fully capable of performing sedentary work. As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination. *Manso–Pizarro v. Secretary of Health and Human Services,* 76 F.3d 15 (1st Cir.1996); *Perez v. Secretary of Health and Human Services,* 958 F.2d 445, 446 (1st Cir.1991); *Berrios Lopez v. Secretary of Health and Human Services,* 951 F.2d 427 (1st Cir.1991); *Gordils v. Secretary of Health and Human Services,* 921 F.2d 327, 329 (1st Cir.1990).

■ The ALJ's grounds for rejecting claimant's own reports of severe pain and

---

2. The alleged lack of recent treatment was not dispositive. Irrespective of claimant's status on the hearing date, he qualified for benefits if he was disabled for any relevant, continuous twelve-month period. 42 U.S.C. § 423(d)(1)(A)

3. Dr. Mahoney's opinion that claimant was incapacitated was consistent with the reports the other treating physicians. For instance, Dr. Seeland reported that claimant was totally disabled upon physical exam.

4. The ALJ apparently opined that Dr. Mahoney's conclusion about claimant's status was inconsistent with the May test results. Although for the reasons mentioned above, the May results were not critical, the ALJ's reasoning was further weakened by his apparent failure to recognize that Dr. Mahoney's opinion, as that of a treating physician may have been entitled to some deference. 20 C.F.R. § 404.1527(d)(2).

5. The medical advisor focused on the indicia for a listed condition involving a herniated disc, 20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.05 C, without mentioning the August or September MRIs, or commenting upon the merits or functional significance of Dr. Mahoney's ultimate diagnosis.

incapacity also lack support in the record. The ALJ reasoned that claimant's complaints were inconsistent with his activities and "the degree of treatment required." Concerning treatment, the record showed that between the date of his injury and April, 1994, claimant continually sought and received treatment for back-pain, including, numerous tests, physical therapy, back-braces, spinal-blocks, various drug regimes and a hospitalization. This was not a case in which a claimant failed to seek treatment for symptoms later claimed debilitating. *C.f., Dupuis v. Secretary of Health and Human Services*, 869 F.2d 622 (1st Cir.1989); *Perez Torres v. Secretary of Health and Human Services*, 890 F.2d 1251, 1255 (1st Cir.1989).

The ALJ also appealed to a discrepancy between claimant's alleged inability to remain seated and his admission that he drove. At the hearing, claimant testified that his chronic neck and back pain prevented him from remaining seated for more than an half-hour; he spent his days shifting position in search of comfort. After taking medication, he reclined for several hours, sleeping two of those hours. The record included claimant's December, 1993 request for reconsideration in which he reported that he had become housebound, venturing out only for medical appointments, and could not tie his shoes or bend. His wife's help was often necessary to don socks and slacks and to shower. To this evidence, the ALJ counterpoised claimant's admission that he drove. The only evidence concerning driving appeared in the initial June, 1993, disability application, where the unadorned ":I drive" was proffered in response to a request for a description of daily activities. The ALJ never asked claimant how much he drove or asked him about his subsequent driving history.

■ In summary, the ALJ's finding that claimant was capable of performing the full range of sedentary work without any significant impairments was not supported by the record. As claimant argues, the error invalidated the ALJ's application of the Grid to discharge his burden of proving that claimant was employable. Pain can constitute a significant non-exertional impairment which precludes naked application of the Grid and requires use of a vocational expert. *Heggarty v. Sullivan*, 947 F.2d 990, 995 (1st Cir.1991); *Burgos Lopez v. Secretary of Health and Human Services*, 747 F.2d 37, 41–42 (1st Cir.1984); *Gagnon v. Secretary of Health and Human Services*, 666 F.2d 662, 664, 666 n. 8 (1st Cir.1981). The inability to remain seated may constitute an exertional impairment which significantly erodes the occupational base for sedentary work and requires use of additional vocational resources. *Rose v. Shalala*, 34 F.3d 13, 19 (1st Cir.1994); *Social Security Ruling 96–9p*, 61 Fed.Reg. 34478 (July 2, 1996)(vocational specialist may be required where period between regularly-scheduled breaks exceeds capacity to remain seated); *Social Security Ruling 83–12* (1983).

## IV.

■ We *vacate* the judgment of the district court and direct the district court to *remand* the case to the Commissioner for further proceedings consistent with this opinion. On remand, the ALJ must reassess, after any proceedings that may be suitable, the severity of claimant's symptoms, including his pain and inability to remain seated, taking into account the entire record and obtaining any expert medical opinion needed to illuminate the medical records. If the ALJ finds, as he may, that any treating physician's opinion is not credible, then he must comply with the regulations by explicating his grounds. In any event, before simply applying the Grid, the ALJ must consider the extent to which claimant's exertional or non-exertional impairments may compromise his ability to perform sedentary work and utilize appropriate vocational resources.

*Vacated* and *remanded.*