Joann AGUIAR, Plaintiff,

v.

Kenneth S. APFEL, Commissioner Social Security Administration, Defendants.

No. CV 98-12422-JLT.

United States District Court, D. Massachusetts.

June 6, 2000.

Brenda J. McNally, Wynn & Wynn, P.C., Raynham, MA, for Joann Aguiar, Plaintiffs.

George B. Henderson, U.S. Attorney's Office, Boston, MA, for Donna E. Shalala, Secretary of Health & Human Services, Defendants.

## MEMORANDUM

TAURO, District Judge.

This case arises under 42 U.S.C. § 405(g), as a review of a denial of disability benefits by the Social Security Administration.

### I. Background:

On January 26, 1996, Plaintiff filed an application for disability insurance benefits. After receiving a denial of her initial application and a denial of her Request for Reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing took place on January 17, 1997. As a result of the testifying Vocational Expert's ("VE") lack of knowledge, a supplemental hearing was scheduled and held on May 27, 1997. On June 27, 1997, Plaintiff received a Notice of Unfavorable Decision.

Plaintiff thereafter filed a Request for Review with the Appeals Council. On October 21, 1998, the Appeals Council denied Plaintiff's Request for Review. On November 30, 1998, a Complaint was filed in this court to appeal the denial of disability benefits.

Plaintiff is a forty-five year old woman with a ninth-grade education. Prior to her disability application, she was employed at a golf ball factory, where she worked for several years in positions such as a "cutter," quality control inspector, and "buffer." [1] Plaintiff asserts that, since March 13, 1995, she has been disabled because of an injury to her neck that occurred at work when she attempted to pull a table towards her.[2] *See* Record at 56–57. Plaintiff had previously suffered from neck problems that led to surgery in 1991 (a cervical laminectomy from C3–7). As a result of her cumulative neck injuries, Plaintiff suffers from "post traumatic and post cervical instability, C3/4 disc herniation, and pre-existing underlying multiple level cervical pathology." *Id.* at 242 (Report of Dr. Adelberg, February 5, 1997).

### II. Analysis:

Under applicable federal regulations, a disability determination is based on a five step sequential evaluation. *See* 20 C.F.R. §§ 404.1520, 416.920; *Rohrberg v. Apfel,* 26 F.Supp.2d 303, 306 (D.Mass.1998). At each of the first four steps the plaintiff has the burden of proving a disability. "Once the claimant has established that she is unable to return to her former employment, however, the burden shifts to the Commissioner to prove the fifth step, that the claimant is able to engage in substantial gainful activity that exists in significant numbers in the national economy." *Rohrberg,* 26 F.Supp.2d at 306–07.

Judicial review in Social Security Disability cases is statutorily limited to determining whether the findings of the Commissioner are supported by "substantial evidence." 42 U.S.C. 405(g). " '[Substantial evidence] means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quot-

1. Prior to that employment, Plaintiff worked as a waitress and bartender.

2. The ALJ attributes the injury to Plaintiff's attempt to open a drawer. *See* Record at 19. As her testimony indicates, the injury in fact occurred when she attempted to pull a wheeled table towards her. Two of the wheels were broken and, when Plaintiff pulled, she "got a pain down the left side of [her] neck and into [her] shoulder. [In addition she] couldn't turn [her] head." *Id.* at 57.

ing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The First Circuit has further stated that "substantial evidence" requires more than a scintilla of evidence, but less than a preponderance. *See Sprague v. Office of Workers' Compensation Programs*, 688 F.2d 862, 865–66 (1st Cir.1982). Where substantial evidence exists, the Secretary's decision will stand, "even if the record arguably could justify a different conclusion." *Rodriguez Pagan v. Secretary of Health and Human Servs.*, 819 F.2d 1, 3 (1st Cir.1987).

Here, the ALJ determined that Plaintiff suffers from "arthritis of the left shoulder and cervical spine, a central disc herniation at C3–4 and a diagnosis of cervical radiculitis, without evidence of consistent neurological deficits." Record at 21. Based on these limitations the ALJ found that Plaintiff "cannot perform her past relevant work," thus shifting the burden to the Commissioner to establish that there are a significant number of jobs in the national economy that Plaintiff could perform. *Id.* at 23–24. According to the ALJ's decision, this burden was met by testimony of the second VE,[3] who testified that Plaintiff could perform the job of quality control inspector or labeler, of which there are 11,300 and 5,800 jobs, respectively, in the regional market. *See id.* at 24. The testimony of the VE, along with the regulatory framework in Rule 201.24 of the Medical/Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, led the ALJ to conclude that Plaintiff is not disabled. *See* Record at 24.

Plaintiff challenges the determination of the Commission on three grounds. First, she argues that the ALJ's findings regarding her credibility are not supported by substantial evidence. Second, Plaintiff argues that the ALJ's hypotheticals to the vocational expert were not supported by substantial evidence. Finally, Plaintiff asserts that the ALJ abased his discretion by accepting the testimony of the second vocational expert over that given by the first. Because Plaintiff convincingly argues the first two points, the court need not consider the third.

### A. The ALJ's Credibility Determination is Not Supported By Substantial Evidence

■ The ALJ begins his analysis by acknowledging that "if the severity of pain and almost complete incapacity the claimant alleges were accepted at face value, there is no doubt she would be unable to perform her past or any other work." *Id.* at 22. He finds, however, "the severity of symptoms and degree of limitations alleged by the claimant to be exaggerated to some extent, and not fully credible." *Id.* at 23. These statements are important because they place the ALJ's credibility determination as the central issue in his decision to deny Plaintiff benefits. While the ALJ "resolves conflicts in the record and makes credibility determinations, [he] cannot base such findings on groundless assertion; they must be supported by substantial evidence." *Rohrberg*, 26 F.Supp.2d at 309 (citing *Frustaglia v. Secretary of Health and Human Servs.*, 829 F.2d 192, 195 (1st Cir.1987)).

■ According to the ALJ, his credibility finding was based both on a lack of medical evidence to support Plaintiff's asserted limitations and upon the conflict between her asserted limitations and her daily activities. *See* Record at 22–23. An examination of these rationales finds them lacking the support of substantial evidence. Rather, Plaintiff's limitations are consistently supported by Plaintiff's medical records and her testimony regarding her regular activities.

---

**3.** Because the ALJ relied on the testimony of the second Vocational Expert, all references are to his testimony.

### 1. Plaintiff's Medical Evidence Supports Her Stated Functional Limitations.

Considering the medical evidence proffered in support of Plaintiff's disability, the ALJ found an "absence of consistent objective findings which show limitation of functioning at a level which would support a conclusion that the claimant is disabled." *See id.* at 22. Specifically, he identified a number of factors. He found that muscle spasms were noted only once and that surgery was not recommended. *See id.* He observes further that Claimant was released for light work in April 1995 and was able to chaperone a school trip. *See id.* He stated that examinations in January and February of 1996 found no neurological deficits to strength or reflex. *See id.* Finally, the ALJ concluded that the only consistent limitations in her medical records apply to working with a bent neck position and lifting or carrying. *See id.* An examination of the record, however, finds that these rationales are not supported by substantial evidence.

First, the ALJ's statement regarding muscle spasms and surgery are inaccurate. Dr. Bowcock (her chiropractor) found "palpable muscle spasticity" during five different examinations in May and June of 1995.[4] *See id.* at 187–88. This was in addition to Dr. Wepsic's diagnosis (a neurosurgeon) of "marked cervical spasm" in an examination on July 8, 1996. *See id.* at 238. Similarly, despite the ALJ's finding that no doctor recommended surgery,[5] two reports by Doctor Adelberg, an orthopedist, suggest the possibility of surgery. *See id.* at 210 (November 16, 1995 report), 242–43 (February 5, 1997 report). Because the ALJ's findings regarding muscle spasms and recommendations of surgery

---

**4.** It is possible that the ALJ was discounting Dr. Bowcock's diagnosis of spasms because he was Plaintiff's chiropractor rather than an orthopedist or neurologist. The ALJ states that with examinations by "various orthopedic and neurological specialists ... muscle spasm has only been noted [sic] only once." Record at 22. If this is the case, the ALJ provides no basis for distinguishing between a diagnosis of muscle spasm by a chiropractor versus an orthopedist or neurologist.

**5.** Further, whether the ALJ placed "little weight" on his belief that surgery was not recommended as a solution, *see id.* at 22, is highly questionable given his skeptical query of Plaintiff regarding this issue. In the January 17, 1997 hearing he states:

> I have Dr. Martin's report in front of me and I read it very differently. "I do not feel surgery is imminent without obvious neurological problems attributable to the new problem in her neck ...."—which is a very different thing from saying it's such a severe condition that with her past surgeries there's nothing we can do. It's sort of at the other end of the spectrum.

*Id.* at 67.

Nothing in Doctor Martin's report, however, suggest that Plaintiff's injuries are so easily minimized. Doctor Martin states:

> I am in receipt of Dr. Adelberg's notes ... and certainly the extensive problems are outlined well there.... She has significant ongoing problems. I do not feel surgery is imminent [without] obvious neurological problems attributable to the new problem within her neck, i.e., C3–4. I have recommended initiation and care ... [at] the best facility to increase her range, increase her capacities and hopefully avoid an operation. Operation would be a substantial undertaking, given the previous surgery that she has had.

*Id.* at 213. Taken in its full context, Doctor Martin's report suggests that surgery, as a substantial undertaking, does not present an obvious solution to Plaintiff's significant problems. This is supported by the opinion of Doctor Wepsic, who noted in his July 31, 1996 follow-up evaluation (after reviewing Plaintiff's myelogram/CAT scan) that "the abnormalities are not sufficiently great that I think that she should be subjected to additional surgery. This would have to be done anteriorly [ (through the front of her neck) ] if it were done, and the spine fused which could create additional problems for her." *Id.* at 240.

The ALJ's reading of Doctor Martin's report as placing Plaintiff's injuries "at the other end of the spectrum," *see* Record at 67, "ignore[s] medical evidence [and] substitute[s] his own views for uncontroverted medical opinion." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). He is not at liberty to do so. *See id.* That this unsupportable reading of Dr. Martin's report bears *any* weight on his decision to deny benefits undermines the validity of that decision.

are plainly contradicted by medical evidence, they cannot properly constitute a basis for questioning Plaintiff's functional limitations. *See e.g., Adie v. Commissioner, Social Security Admin.*, 941 F.Supp. 261, 267–269 (D.N.H.1996) (selective consideration, mischaracterization and misrepresentation of medical evidence cannot support decision to discredit claimant's reports of pain).

Next the ALJ notes that, in April of 1995, following improvement in her condition, Dr. VonErtfelda released Plaintiff to return to work for "light duty," and that Plaintiff was able to "engage in normal activities, e.g., chaperoning a school field trip." *Id.* at 22. By itself, this fact suggests that Plaintiff's injuries were not permanently disabling. When Plaintiff attempted to return to work, however, she suffered "severe pain" that caused her to go to the emergency room. *Id.* at 182 (Emergency Room Report of Dr. Jane Mailloux). Furthermore, none of the subsequent medical evaluations showed any similar signs of improvement or in any way suggest that Plaintiff was capable of returning to "normal activities." Plaintiff's temporary improvements in April 1995 are thus of little probative value, as all of her subsequent medical evaluations suggest significant functional limitations, and the ALJ makes no effort to reconcile any inconsistency.

The ALJ also questions Plaintiff's functional limitations in light of findings that Plaintiff suffered "no neurological deficits to strength or reflex." *Id.* at 22 (citing examinations by Doctors Martin and Adelberg). "As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms, and no medical opinion supported [his] determination." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999). Here, neither Doctor made statements suggesting that their

findings contradicted Plaintiff's complaints in any way. Indeed, both noted significant functional limitations. Doctor Adelberg stated, "I consider Ms. Aguiar disabled with regards to any activities which require a normal neck, and it is difficult to envision a niche in the workplace that she would comfortably or safely perform. . . . Ms. Aguiar must necessarily avoid even modest range of motion of the cervical spine and certainly is not in a position to be performing any lifting or carrying function." Record at 209 (letter of November 16, 1995). Similarly, Doctor Martin notes that Plaintiff suffers from "severe neck stiffness to all planes of motion tested, about 5 [degrees] in any place. . . . She has significant ongoing problems." *Id.* at 213 (examination notes of February 23, 1996). The ALJ's conclusions are thus problematic because he relies upon the technical medical evaluation (no neurological deficits to strength or reflexes) without discussing the actual functional limitations included in the doctors' reports. It is not permissible for the ALJ to pick and choose technical language from medical evaluations and draw conclusions that are unsupported, or indeed, contradicted by the functional limitations discussed. *See Nguyen*, 172 F.3d at 35.

Contrary to the ALJ's findings, a review of Plaintiff's medical evaluations demonstrates that her doctors consistently diagnosed significant functional limitations in her neck.[6] Doctor Bowcock's examination notes from April 10, 1995 state that Plaintiff "has severe restricted ranges of motion in the cervical spine." Record at 184. Doctor Adelberg's letter of November 16, 1995 diagnoses "cervical disc herniation, post surgical instability, and multiple level neural element impingement." *Id.* at 209. He further opines that "Ms. Aguiar [is] disabled with regards to any activities

---

**6.** The ALJ states that the "only" consistent limitations found in the medical evidence relate to Plaintiff's ability to bend her neck and lift or carry. *See* Record at 22. This is not surprising, as these are the Plaintiff's primary

complaints and they underlie her assertions of pain and stated functional limitations. That these limitations are the "only" ones supported does not undermine their validity.

which require a normal neck," finding "markedly limited range of motion, especially with regards to extension." *Id.* Dr. Wepsic's "primary physical finding is severe neck stiffness to all planes of motion tested, about 5 [degrees] in any place." *Id.* at 213 (February 23, 1996 exam notes). He states that "[s]he has significant ongoing problems." *Id.* After reviewing her mylogram/CAT scan Dr. Wepsic concludes, "I feel that she is likely at a medical end result and has substantial restriction of neck motion and impairment for employment that would require her to flex or extend her neck, to lift more than 10–15 pounds or to remain in one position for long periods of time." *Id.* at 240 (July 31, 1996 letter). Doctor Stern, a neurosurgeon, found in an October 15, 1996 examination that Plaintiff had "marked restriction of neck motion in all directions." *Id.* at 235. Finally, following a post-hearing examination, Dr. Adelberg reports that Plaintiff is

> disabled with regards to any activities which require a normal neck and upper extremity. As she has radicular symptoms that come on even with activities of daily living and has an abnormal flexion extension lateral spine series, she must be considered to have an unstable spine and in my opinion, should not even be driving.

*Id.* at 242 (February 5, 1997 letter).

In short, all of the probative medical evidence is consistent with Plaintiff's testimony regarding her functional limitations, and contradictory to the ALJ's conclusions. While "[t]he ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), [they] are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen,* 172 F.3d at 35. Here, the ALJ relies upon incorrect conclusions and his own unsupported interpretations of technical medical diagnoses. The ALJ's finding that Plaintiff's stated functional limitations are con-

tradicted by her medical evaluations thus lacks the support of substantial evidence.

### 2. Plaintiff's Daily Activities Do Not Contradict Her Stated Functional Limitations

The ALJ also found that Plaintiff's testimony regarding her daily activities was inconsistent with her stated functional limitations. His decision reads:

> The claimant testified that she cannot work because of her neck pain, but she is able to go out with her daughter, perform light cooking, light shopping, dust, fold laundry, go visiting on a regular basis, and drive her car (though advised at one point not to). It is also noted that while the claimant complains of pain and significant limitation of motion, in August 1995 she "jumped into a pool" with enough force to sprain a toe, requiring medical attention. The Administrative law Judge finds the claimant is not motivated to work, as she continues to collect Worker's Compensation.

> The Administrative Law Judge finds the severity of symptoms and degree of limitations alleged by the claimant to be exaggerated to some extent and not fully credible.

Record at 23. This conclusion is flawed first, because it does not reflect the proper analysis of Plaintiff's allegations of pain, and second, because the ALJ provides no other basis for questioning Plaintiff's veracity.

a. The ALJ's pain analysis does not reflect a full *Avery* inquiry or a consideration of all available evidence.

 When analyzing subjective assertions of pain, the First Circuit requires an ALJ to examine six essential factors. *See Avery v. Secretary of Health and Human Servs.,* 797 F.2d 19, 29 (1st Cir.1986). These include:

> (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) Precipitating and aggra-

vating factors (e.g. movement, activity, environmental conditions); (3) Type, dosage effectiveness, and adverse side-effects of any pain medication; (4) Treatment, other than medication, for relief of pain; (5) Functional restrictions; and (6) the claimant's daily activities.

*Id.* In addition to investigating these factors, the ALJ must also "give full consideration to all of the available evidence, medical and other, that reflects on the impairments and any attendant limitations of function." *Id.* An examination of the record indicates that the ALJ failed to fully investigate all of these factors, and ignored significant evidence that was adduced.

While the ALJ's inquiry at the hearing covered most of *Avery's* six factors (at least when coupled with those responses elicited by Plaintiff's attorney), his questioning was insufficient in developing evidence relating to Plaintiff's daily activities. Specifically, the ALJ notes in his decision that Plaintiff was able to chaperone a school trip for her daughter, *see* Record at 22, and that she sprained her toe while jumping into a pool in August 1995. *See id.* at 23. Nowhere during the hearing, however, did the ALJ question Plaintiff about these events. This is a significant omission in that these activities are the most suggestive of Plaintiff's ability function without significant restrictions. Similarly, the ALJ made no inquiry to support his conclusion that Plaintiff could "go visiting on a regular basis." *Id.* at 23. This finding is based solely on the fact that a social worker had circled "visits with friends, relatives, neighbors" and wrote "regularly" in a box on Plaintiff's Social Securities Administration Disability Report. *See id.* at 141. If the ALJ intended to rely on this particular activity as a basis for questioning Plaintiff's credibility, he should have inquired further to learn from Plaintiff her precise capabilities. Where the ALJ does not conduct a thorough investigation into Plaintiff's daily activities he cannot make a meaningful determina-

tion regarding her subjective assertions of pain. *See Rohrberg,* 26 F.Supp.2d at 308.

Equally problematic is the ALJ's portrayal of the testimony that was elicited regarding Plaintiff's daily activities. The decision reads: "[C]laimant ... is able to go out with her daughter, perform light cooking, light shopping, dust, fold laundry ... and drive her car." Record at 23. He also notes that on the average day Plaintiff sleeps until 11:30 a.m., and that she watches television about eight hours a day. *See id.* at 22. In so describing Plaintiff's daily activities, the ALJ neglected to include any of the limitations that Plaintiff experiences. In response to the ALJ's questions regarding her daily activities, she stated:

Well, I used to do everything, until I got hurt. I worked nights, and I did everything around the house. But now, it all depends on what time I go to sleep at night. I can't sleep, so sometimes I sleep until, 11, 12. I used to do all my housework. I used to do everything. But now I don't. I can only do light housekeeping, like maybe dusting. I'll make my bed. I have a 14 year old daughter who helps me a lot and I don't do much lifting. I, shopping, I'll go shopping. But my daughter will do everything else. I depend on her literally. I spend my time mostly laying down or sitting around.... I watch television. I, I don't read much. Because I, it's hard to look my head down for long periods of time.... I do light cleaning. I'll dust with the duster. I try to cook supper. I'll, my daughter will do everything else, but I'll help fold the laundry when she brings it up. I try to do what I can, but the more that I do, the more I pay for at night and the next day.... I go down to the grocery store. But my daughter will take the cart, the bags from the shopping cart and put them in the car.

*Id.* at 61–62 (January 17, 1997 Hearing). Plaintiff also testified that she cannot sit for more than half an hour and must use a recliner to avoid muscle spasms in her

neck; that her pain medication (Darvocet) makes her tired and groggy; that she wears a Philadelphia collar three to four hours a day; and that she wakes up three to five times during the night because of her neck pain. *See id.* at 63, 72, 71, 75. The ALJ's decision makes no mention of these limitations upon Plaintiff's daily activities, nor, more strikingly, is there any detailed discussion of the type of pain she experiences. *See, e.g., id.* at 58–59, 63, 71, 73–75. Because of his failure to properly inquire into Plaintiff's daily activities or address Plaintiff's assertions of pain, the ALJ cannot demonstrate that he adequately developed the record or gave full consideration to all of the available evidence. *See Avery,* 797 F.2d at 28–29.

b. The ALJ provides *no other basis for* questioning Plaintiff's veracity.

The ALJ's opinion also lacks any other basis for finding that Plaintiff was not a credible witness. He makes no reference to Claimant's "demeanor, evasiveness or combativeness, nor to any other observations indicating a basis for discrediting her testimony." *Rohrberg,* 26 F.Supp.2d at 310. This is an important omission where the ALJ's analysis of Plaintiff's medical records, assertions of pain, and daily activities is based on erroneous conclusions or incomplete inquiries. *See id.*

Also of significance is the ALJ's conclusion that "the claimant is not motivated to work as she continues to collect Worker's Compensation." Record at 23. This assertion is wholly unsupported. Claimant's motivation cannot automatically be questioned merely because she has availed herself of whatever public assistance that the state or federal government provides. *See Leggitt v. Sullivan,* 812 F.Supp. 1109, 1120 (D.Co.1992) ("The ALJ is required to be fair and impartial, and not prejudiced by a claimant's financial status (receipt of state benefits).") (citing *Caldwell v. Sullivan,* 736 F.Supp. 1076, 1081 (D.Kan.1990) (ALJ's questioning of claimant's credibility based on her desire to obtain available benefits was "extremely distasteful [and]

legally unsupportable")). That Plaintiff's receipt of Worker's Compensation benefits played any role in drawing her credibility into question fails the substantial evidence standard.

█ While an ALJ is free to make determinations regarding credibility, those findings must be rationally supported. *See Rohrberg,* 26 F.Supp.2d at 309. Here, the ALJ made findings that are unsupported—and even directly contradicted—by the medical evidence. In addition, his pain inquiry was flawed because he failed to make adequate inquiries into Plaintiff's daily activities while misconstruing much of the testimony he did elicit. Lastly, he concludes that Plaintiff's complaints of pain are not credible without engaging in a meaningful discussion of what those complaints are. Substantial evidence requires far more. "[T]he ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the appellant." *Da Rosa v. Secretary of Health and Human Serv.,* 803 F.2d 24, 26 (1st Cir.1986). The ALJ having failed to do so here, the court finds the Secretary's decision unsupported by substantial evidence and ALLOWS Plaintiff's motion to reverse that decision.

B. The Hypothetical Used by the Administrative Law Judge Was Not Supported by Substantial Evidence

Once the ALJ determined that Plaintiff was not capable of performing her prior work, "the burden shifts to the Secretary to show the existence of other jobs in the national economy that the claimant can nonetheless perform." *Guyton v. Apfel,* 20 F.Supp.2d 156, 162 (D.Mass.1998). Here, the ALJ sought to meet this burden by relying on the testimony of a vocational expert ("VE").

█ Plaintiff argues that the residual functional capacity ("RFC") utilized in the ALJ's hypothetical to the vocational expert was not supported by substantial evidence, and thus the court should not rely on the

VE's testimony. Considering the "the claimant's allegations of pain, functional limitations and activities of daily living," the ALJ determined that

> claimant could sit for 6–8 hours and stand for up to 2 hours in an 8–hour day, would be moderately limited in her ability to use her non-dominant left hand for activities requiring fine motor skills, and would be limited to no more than minimal rotation, extension or flexion of the neck. Her ability to maintain attention and concentration would [also] be mildly reduced.

Record at 23. Based on this hypothetical, the VE testified that Plaintiff could perform the job of quality control inspector or labeler—jobs that exist in substantial numbers in the local economy. *See id.* at 40.

It is appropriate for the ALJ to rely upon the testimony of a vocational expert to determine if sufficient work exists in the economy which a claimant is capable of performing. *See Arocho v. Secretary of Health and Human Serv.,* 670 F.2d 374, 375 (1st Cir.1982). "But in order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." *Id.* As discussed above, the ALJ's conclusions regarding Plaintiff's functional limitations are not supported on the record. The ALJ failed to make adequate inquiry into Plaintiff's daily activities, and reached conclusions without addressing the limitations brought out in the record. Further, his determinations regarding Plaintiff's credibility and her assertions of pain are equally unsupported. As such, the hypothetical does not accurately address Plaintiff's ability to sit or maintain the same position for extended periods of time, her endurance,

or the limitations upon her neck movement.[7] Because of these flaws, the answers by the VE are not probative of Plaintiff's ability to work. *See Arocho,* 670 F.2d at 375.

In many ways, the answers of the VE are the clearest illustration of the errors in the ALJ's hypothetical. According to the ALJ, Plaintiff is disabled from performing her "past relevant jobs in the golf ball factory[,] classified as sedentary and light in exertion." Record at 23. During the May 27, 1997 hearing, however, the ALJ posed the aforementioned hypothetical and asked whether Plaintiff "would be able to engage in the work [she] performed in the past, which you testified as sedentary, unskilled work?" *Id.* at 39. The VE responded "yes." *Id.* The ALJ makes no effort to reconcile this response with his own subsequent conclusion that Plaintiff was unable to return to her previous work. Further, when the ALJ asks what other types of work Plaintiff could perform, the VE responds that she could work as a quality control inspector or labeler. *See id.* at 40. This answer is again contradictory to the ALJ's ultimate conclusion that Plaintiff could not do her prior work because one of Plaintiff's prior jobs at the golf ball factory was quality control inspection. *See id.* at 47–48. In essence, the hypothetical so thoroughly underestimated Plaintiff's limitations that the VE found that she could return to her prior work, when even the ALJ acknowledges that this was not possible.

Because the ALJ's hypothetical failed to incorporate a fair representation of Plaintiff's medically diagnosed limitations, the court once again finds the disability determination unsupported by substantial evidence.

---

7. For example, the VE responds to a question by Plaintiff's attorney about the necessity to extend or flex her neck while performing quality control inspection that "my understanding of the hypothetical it was, it was based on an average rotation, or an average, there's nothing extraordinary in terms of using a neck to perform a final inspection." Record at 43. The medical evidence undisputedly indicates that Plaintiff's cervical mobility is anything but average. That the ALJ's hypothetical suggested this further demonstrates its flaws.

C. The ALJ's Decision Warrants Reversal.

 When a district court reviews a final decision of the Commissioner of Social Security, it has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner ..., with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). "This wording is 'a mandate [from Congress] to foreshorten the often painfully slow process by which disability determinations are made'" *Rohrberg*, 26 F.Supp.2d at 312 (quoting *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir.1983)). If the Commissioner fails to meets its burden, it may be appropriate for the district court to reverse and award damages, without providing the Commissioner further proceedings in which to correct his errors. *See, e.g., id.; Field v. Chater*, 920 F.Supp. 240, 244 (D.Me.1995).

Here, the ALJ had the responsibility, and a full and fair opportunity, to examine Plaintiff "about her complaints of pain, sufficiently determine her daily activities, present contrary medical evidence, and obtain a medically determined RFC." *Rohrberg*, 26 F.Supp.2d at 312. He failed to do so, even though he convened two separate hearings in which to gather evidence. There is no basis for providing the Commissioner yet another bite at the apple. *See id.*

Additionally, there is ample support on the record for a finding of disability. As the ALJ noted, if Plaintiff's assertions of pain were fully credited, there would be "no doubt [that] she would be unable to perform her past or any other work." Record at 22. While the ALJ chose not to credit Plaintiff's testimony, he provided an inadequate basis for doing so.

### III. Conclusion

For the reasons discussed above, Plaintiff's motion to reverse the Commissioners decision is ALLOWED, and the Government's motion to affirm the decision us DENIED. The case is REMANDED to the Commission for calculation and award of benefits.

AN ORDER SHALL ISSUE.