Lovely v. SSA                           CV-00-196-JD   10/20/00

UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE


Raymond Lovely

     v.                                Civil No. 00-196-JD
                                       Opinion 2000 DNH 221
Kenneth S. Apfel, Commissioner,
Social Security Administration


                           O R D E R


     The plaintiff, Raymond Lovely, brings this action pursuant

to 42 U.S.C.A. § 405(g) seeking review of the decision of the

Commissioner to deny his claim for Title II social security

benefits.  Lovely challenges the Commissioner's decision on the

grounds that the Administrative Law Judge ("ALJ") failed to

properly assess his subjective complaints of pain and the

severity of his impairment due to depression, and failed to

consider the combined effects of his physical and mental

impairments.  Lovely moves to reverse the decision of the

Commissioner, and the Commissioner moves to affirm.


                          Background[1]

     Raymond Lovely applied for disability benefits in November

of 1996, alleging a disability since October of 1995 after

───────────────────────

     [1]The background facts are taken from the parties' joint
statement of material facts.

surgery on his right shoulder.  His application was denied on initial consideration and on reconsideration.  He requested an administrative hearing, which was held in July of 1997, and the ALJ denied his application on June 20, 1998.  The Appeals Council denied his request for review.  Therefore, the ALJ's decision is the final decision of the Commissioner.

Lovely has included in the record here two evaluation forms that were completed by his treating doctors in 1999, after the ALJ rendered his decision on Lovely's application.  The forms were submitted to the Appeals Council, but the Council denied review.  Lovely argues that the forms should be considered here as part of the administrative record.  The Commissioner objects, arguing that the new evidence may only be considered for purposes of remand, not reversal, of the Commissioner's decision.

The circuits are split as to whether and to what extent the court may consider new evidence that was submitted only to the Appeals Council, and the First Circuit has not decided the question.  See Ward v. Commissioner of Social Security, 211 F.3d 652, 657 n.2 (1st Cir. 2000).  Those circuits that deem new evidence, submitted only to the Appeals Council, to be part of the administrative record rely on the Commissioner's regulation, 20 C.F.R. § 404.970(b), that permits new evidence to be submitted to the Appeals Council.  See, e.g., Bergmann v. Apfel, 207 F.3d

2

1065, 1069 (8th Cir. 2000); Schaal v. Apfel, 134 F.3d 496, 505 n.8 (2d Cir. 1998). In order to be considered by the Appeals Council, however, new evidence must relate to the period on or before the date of the ALJ's decision. See § 404.970(b).

In this case, the two forms submitted to the Appeals Council were completed after the ALJ rendered his decision on June 20, 1998. Nothing in the forms suggests that they pertain to Lovely's condition prior to June of 1998. Therefore, the new evidence should not have been considered by the Appeals Council and is not properly part of the record here. See, e.g., Webb v. Apfel, 2000 WL 1209385 at *3 (W.D.N.Y. Aug. 24, 2000).

Raymond Lovely is a high school graduate, and he was fifty-three years old in June of 1998 when the ALJ denied his application for benefits. He worked as a cable television installer and repairman until October of 1995. He will remain insured for purposes of Title II benefits through the end of 2001.

After experiencing pain in his shoulder for several months, Lovely underwent arthroscopic surgery on his right shoulder in October of 1995. Dr. Stanley Makman, Lovely's orthopedic surgeon, reported that although he had healed well in November of 1995, he continued to experience some pain in the shoulder and then in his neck, particularly with overhead activities, through

3

July of 1996.  Dr. Makman initially stated that Lovely could do at least light to medium work that did not involve lifting more than ten pounds overhead with his right arm, and could otherwise easily lift fifty pounds.  In June of 1996, in response to Lovely's job requirements, Dr. Makman decided to release him to return to work on an unrestricted basis for a trial period.  Lovely nevertheless lost his job.  A functional capacity evaluation in December of 1996 showed that Lovely was able to do work at a medium exertional level, but not continuous or repetitive overhead reaching with his right arm.

In March of 1997, Lovely reported to Dr. Robert Englund, his primary care physician, that he continued to have pain and disability in his right shoulder and arm, primarily diffuse aching.  Dr. Englund noted that his shoulder rotation was only minimally impaired.  Dr. Englund set up an appointment with Dr. Roger Hansen, an orthopedic surgeon, to evaluate his shoulder.

Dr. Hansen examined Lovely in April of 1997 with complaints of pain in his shoulder radiating into his neck and arm.  Lovely's only medication was ibuprofen.  On examination, Lovely showed a full range of neck and shoulder motion.  A few minutes after the testing Lovely complained of a recurrence of neck and arm pain.  X-rays of his neck and right shoulder were "unremarkable."  A neurological examination in May of 1997 showed

4

normal strength, reflexes, and sensation in both arms.  An electromyographic examination also showed normal results.  Dr. Hansen did not advise surgery, but recommended continued management of Lovely's symptoms.

The state agency physicians who reviewed Lovely's medical records in December of 1996 and March of 1997 concluded that he was able to perform work at a medium exertional level.

Lovely had been treated for depression by Randall O'Brien, a psychiatric social worker, sporadically since 1984.  In March of 1997, O'Brien noted that Lovely said that he was feeling "down" and lacking motivation.  Lovely acknowledged that he was drinking three to four large beers each night and sometimes more on weekends.  O'Brien noted that his efforts to emphasize to Lovely the need to curtail his drinking had little effect.

In June of 1997, Lovely told Dr. Englund that he was discouraged, but Dr. Englund did not see signs that Lovely was significantly depressed.  When Lovely told Dr. Englund that he did not want to return to work because he would lose his disability benefits, Dr. Englund pushed him to do volunteer work as an alternative.

In July of 1997, O'Brien reported that Lovely had suffered from depression for many years but had never been seriously suicidal or required hospitalization.  O'Brien had recommended

anti-depressants many times over the years of counseling, but Lovely steadfastly refused that form of treatment. Lovely also was not interested in substance abuse therapy. O'Brien stated that he believed that Lovely's depression had interfered with his ability to function over the course of many years.

Lovely, who was represented by counsel, testified at his administrative hearing held on July 8, 1997. He said that he had constant pain from his right shoulder blade up through his neck and ear to his eye. He testified that ordinary household work, holding a newspaper, and driving were painful. He said that ibuprofen provided only partial and temporary relief.

He also testified that he had seen Randall O'Brien for counseling for depression and increased drinking. He said that he did not take anti-depressants, recommended by O'Brien, because he did not feel that he needed medication and he felt he should be able to deal with his problems on his own. He said that his mood fluctuated and that when he was most depressed, he did not feel like doing anything.

After the hearing, the ALJ sent interrogatories to a vocational expert. The ALJ asked the vocational expert to assume that the claimant was "limited from overhead lifting and reaching, repetitive right upper extremity movements, and use of vibratory tools with the right upper extremity." Jt. Statement

6

at 9. In response, the vocational expert provided a list of nineteen unskilled light and sedentary jobs that a claimant with the described limitations could do. Counsel for Lovely did not submit interrogatories to the vocational expert.

The ALJ found that Lovely's shoulder condition was a severe impairment that prevented him from returning to his previous work as a cable television technician. The ALJ concluded that Lovely's depression was not a mental illness that constituted a severe impairment. The ALJ also did not fully credit Lovely's statements concerning his shoulder impairment and its effect on his ability to work. The ALJ decided that Lovely was capable of performing light work that did not require overhead reaching or lifting, repetitive motion with his right arm, or use of vibratory tools. Based on the vocational expert's interrogatory answers, the ALJ determined that jobs existed that Lovely could do and that he was not disabled.

### Standard of Review

The court must uphold a final decision of the Commissioner denying benefits unless the decision is based on legal or factual error. Manso-Pizarro v. Secretary of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877, 885 (1989)). The Commissioner's factual findings are

7

conclusive if based on substantial evidence in the record. 42 U.S.C.A. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted). The Commissioner's findings are not conclusive "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). In making the disability determination, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." Irlanda Ortiz v. Secretary of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

## Discussion

Lovely's application was denied at step five of the sequential evaluation process set forth in 20 C.F.R. § 404.1520.[2]

---

[2] The ALJ is required to make the following five inquiries when determining if a claimant is disabled:

 (1) whether the claimant is engaged in substantial gainful activity;
 (2) whether the claimant has a severe impairment;
 (3) whether the impairment meets or equals a listed impairment;
 (4) whether the impairment prevents the claimant from performing past relevant work; and

8

At the fifth step, the Commissioner has the burden to show that despite the claimant's severe impairment, he retained the residual functional capacity to do work other than his prior work during the covered period and that work the claimant can do exists in significant numbers in the relevant economies. See Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991). Lovely contends that the Commissioner's decision should be reversed because the ALJ did not properly assess the credibility of his complaints of pain, the severity of his mental impairment due to depression, and the effect of the combination of his mental and physical impairments. As a result, Lovely argues, the hypothetical posed to the vocational expert did not accurately reflect his functional limitations and, therefore, the vocational expert's opinion does not constitute substantial evidence in support of the ALJ's decision.

A. Pain

When a claimant alleges disability due to pain, in assessing the claimant's residual functional capacity, the ALJ must first determine whether the claimant has a medically determinable

---

(5) whether the impairment prevents the claimant from doing any other work.

See 20 C.F.R. § 404.1520.

9

impairment that is reasonably likely to produce the pain claimed. See 20 C.F.R. § 404.1529(a) and (b); Nguyen, 172 F.3d at 34. If so, the ALJ must assess the severity of the pain and the extent to which pain impedes the claimant's ability to work by considering all of the pertinent evidence of record including "claimant's statements, opinions of treating physicians, reports of claimant's activities and claimant's course of treatment." Id., see also DaRosa v. Secretary of Heath and Human Servs., 803 F.2d 24, 25-26 (1st Cir. 1986). "[C]omplaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." Dupuis v. Secretary of Health and Human Servs., 869 F.2d 622, 623 (1st Cir. 1989).

The ALJ in this case provided very little analysis in support of his finding that Lovely's statements concerning his impairment were not entirely credible. After reciting the applicable standard for assessing a claimant's subjective complaints and finding that Lovely "does in fact have a disabling impairment," the ALJ largely ignored the factors necessary for assessing the severity of any impairment caused by pain. The ALJ found that Lovely was released by Dr. Makman, his orthopedic surgeon, for full duty work and that a neurological evaluation revealed right shoulder arthalgia (which means pain), but no evidence of the cause. The ALJ concluded that there was "no

10

neurological explanation for the level of pain alleged," which is apparently the sole basis for the ALJ's determination that Lovely's subjective complaints were not credible.

Having found that Lovely had a severe impairment capable of causing pain, the ALJ was obligated to determine the extent of the pain in light of the applicable factors and make specific findings in support of his determination. See DaRosa, 803 F.2d at 26. Dr. Makman's decision to release Lovely to full work says little about Lovely's level of pain since the effort was unsuccessful and other capacity assessments were more restrictive. The results of testing by Dr. Ruel do support the ALJ's finding that there is no direct neurological explanation for the level of pain alleged.

The social security regulations, however, recognize that pain may indicate a more severe impairment than can be documented by medical evidence. See § 404.1529(c)(3). The ALJ did not address the other factors that are necessary for assessing a claimant's subjective complaints of pain. See id.; Avery v. Secretary of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). In response to questions by his attorney, Lovely testified at the hearing about the frequency, extent, and duration of the pain in his shoulder, neck, and face; about his treatment and medication; and about his functional restrictions

11

and daily activities.  The ALJ did not inquire as to any of those factors, nor did the ALJ address those factors in his findings.  The ALJ also did not make findings based on his own observations of Lovely at the hearing.  In sum, the ALJ failed to properly assess Lovely's subjective complaints of pain in this case.  See Frustaglia v. Secretary of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Bazile v. Apfel, 2000 WL 1370449 (D. Mass. Sept. 20, 2000); Aguiar v. Apfel, 99 F. Supp. 2d 130, 133 (D. Mass. 2000); Blake v. Apfel, 2000 WL 1466128 (D.N.H. Jan. 28, 2000).

Because the ALJ failed to apply the appropriate standard in assessing the credibility of Lovely's statements about the extent of his impairment, his finding is not conclusive.  See Nguyen, 172 F.3d at 35.  The Commissioner's decision that Lovely was not disabled depends heavily on the ALJ's credibility finding.  Therefore, the decision must be vacated and the case remanded for further proceedings.  See DaRosa, 803 F.2d at 26.

B.  Depression

Lovely also contends that the ALJ erred in not finding that his depression was a severe impairment, or that even if it were not severe, depression in combination with his physical impairment caused him to be disabled.  Lovely sought counseling

12

with a clinical social worker, Randall O'Brien, over a period of years.  In March of 1997, O'Brien noted that Lovely reported depression and alcohol consumption.  In July, O'Brien stated that Lovely had suffered from depression for many years which did not require hospitalization, but interfered with his ability to function.  O'Brien also said that Lovely steadfastly refused treatment with anti-depressants and refused substance abuse therapy.  The ALJ found that Lovely did not have a severe impairment due to depression and did not further consider depression in his analysis.

The ALJ properly determined that as a social worker, O'Brien's opinion about Lovely's mental health was not entitled to deference, and the ALJ was entitled to reject the opinion. See 20 C.F.R. § 404.1513(a).  The ALJ found that the record of a lack of a need for treatment demonstrated that Lovely did not have a severe mental impairment.  In addition, since Lovely rejected the treatment alternatives suggested by O'Brien, without providing a good reason, he cannot rely on depression as an impairment.[3]  See 20 C.F.R. § 404.1530(b); Tsarelka v. Secretary of Health and Human Servs., 842 F.2d 529, 534 (1st Cir. 1988).

---

[3]Although the Commissioner also argues that Lovely's alcohol use bars his claim for mental impairment, the ALJ made no findings as to the materiality of alcohol use on Lovely's mental status.  See 20 C.F.R. 404.1535(b)(1).

13

Based on the evidence in the present record, Lovely has not shown that the ALJ erred in finding that his depression was a severe impairment. Since the record lacks evidence that depression, even if not a severe impairment, significantly affected Lovely's ability to work when combined with his shoulder impairment, the ALJ also did not err in failing to consider the combined effect. Since Lovely's insured status has not yet expired, on remand, he may present new evidence if such exists, of any of his claimed impairments.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse the decision of the Commissioner (document no. 6) is granted in part, in that the decision is vacated and the case is remanded for further proceedings. The Commissioner's motion to affirm (document no. 8) is denied. As this is a "sentence four" remand, the clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

October 20, 2000

cc:  Raymond J. Kelly, Esquire
     David L. Broderick, Esquire

14