Robert Chulada v. SSA                    CV-01-083-B    01/31/02
                UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE


**Robert Chulada**

   **v.**                                Civil No. 01-083-B
                                         **2002 DNH 036**
**JoAnne Barnhardt, Commissioner,**
**Social Security Administration**


### MEMORANDUM AND ORDER

Robert Chulada applied to the Commissioner of the Social
Security Administration for both disability insurance benefits
("DIB") under Title II of the Social Security Act, 42 U.S.C. §
401 et seq., and Supplemental Security Income ("SSI") under Title
XVI of the Act, 42 U.S.C. § 1382 et seq.  Following a hearing, an
Administrative Law Judge ("ALJ") granted Chulada's application
for SSI but denied his request for DIB because he determined
that, while Chulada was disabled when he applied for benefits and
therefore was entitled to SSI, he did not become disabled until
after his eligibility for DIB had expired.  Chulada argues that
the ALJ's decision must be vacated.  Because I agree, I remand
the case to the Commissioner for further proceedings.

## I.  **OVERVIEW OF THE CASE**

Chulada is a former truck driver who claims that he has not worked since May 1991 and has been disabled from working since January 1, 1992, when he was 45 years old.  In his initial benefits applications, Chulada specified that he was disabled due to severe depression and a back injury.  The Social Security Administration denied Chulada's applications initially and upon reconsideration.

On March 15, 1999, Administrative Law Judge ("ALJ") Kenneth Harap held a hearing on Chulada's applications, and on June 10, 1999, he issued a written decision.  In that the decision, the ALJ concluded that, as of July 16, 1997, the date he applied for benefits, Chulada was disabled within the meaning of the Act because his physical impairments and mental illness prevented him from returning to his prior work and from making a vocational adjustment to other work which exists in the national economy.  As a result, the ALJ found Chulada entitled to SSI, which is paid under a needs-based program not contingent on any earnings requirement.

But the ALJ further determined that, through December 31, 1996, the date on which Chulada was last insured under the DIB

program, Chulada retained the capacity to perform a wide range of light work, which is readily available throughout the national economy, and accordingly was not disabled within the meaning of the Act. In explaining this conclusion, the ALJ specifically stated that, on or around July 16, 1997, Chulada experienced an "onset of major depression" that, in combination with the ongoing physical limitations that precluded him from driving a truck and limited him to light work, rendered him totally disabled. The ALJ also repeatedly referred to Chulada's mental condition as having "deteriorated" on or after July 16, 1997, and stated that Chulada had "no psychological limitations other than his drug dependence" on or prior to December 31, 1996.

In this action, Chulada's general, albeit somewhat implicit, position is that the ALJ lacked a basis for concluding that his mental illness, which all agree was disabling as of July 16, 1997, (1) was non-existent or not disabling on or prior to December 31, 1996, and (2) worsened to the point of becoming disabling only in mid-1997. In support of his first argument, Chulada also makes a subsidiary assertion that, to the extent that the ALJ's conclusion that Chulada had "no psychological limitations other than his drug dependence" prior to 1997 was

premised on a finding that Chulada <u>was</u> mentally ill prior to 1997 but suffered only from mental illness attributable to his drug dependence (a finding which would preclude the payment of disability benefits, <u>see, e.g.</u>, <u>Bustamante v. Massanari</u>, 262 F.3d 949, 954-55 (9th Cir. 2001)), the ALJ made a medical judgment beyond his competence as a layperson.

## II. <u>RELEVANT EVIDENCE</u>

As mandated by Local Rule 9.1, the parties have submitted a joint statement of material facts summarizing the evidence that the ALJ considered in rendering his decision. <u>See</u> Document no. 10. Because all agree that Chulada's psychological condition rendered him disabled as of July 16, 1997, and because this case challenges only the ALJ's determinations that (1) Chulada had "no psychological limitations other than his drug dependence" on or prior to December 31, 1996; (2) Chulada's mental condition "deteriorated" to the point of becoming disabling on or around July 16, 1997, I shall limit my recitation to evidence bearing on these issues. The balance of the parties' joint statement is incorporated by reference.

<u>A. Evidence of Psychological Impairments Prior to 1997</u>

There is strong record evidence that, on or prior to

December 31, 1996, Chulada suffered from depression.  In his

October 28, 1993 psych-med assessment, Nechal Tejwani, M.D.,

diagnosed Chulada as suffering from depression, which he

described as "moderate . . . including some vegetative signs."

In his November 26, 1993 "Evaluation Report," clinician N. Paskow

of the Psychological Center diagnosed Chulada with "vegetative

depression," as well as manic symptoms, mood swings, intense

instability, and racing thoughts.  In his August 6, 1997 report,

Hans W. Standow, M.D., described Chulada's depression as both

"major" and "recurrent," thus at least implying that the

depression was not of recent origin.  Similarly, in his December

10, 1997 psychological evaluation, Angel R. Martinez, Ph.D.,

diagnosed Chulada as having a "major depressive disorder" which

was "recurrent."[1]  The January 1996 admission assessment of

Spectrum Addiction Services, Inc., described Chulada as suffering

from "severe" depression.  Finally, the December 4, 1996

admission assessment Spectrum Health Systems, Inc., observed that

---

[1]By contrast, in August 1997, Thomas Meehan, M.D., of
Bedford Counseling Associates diagnosed Chulada with a "single
episode" of "major depression."  And Chulada's intake sheet at
Bedford Counseling Associates states "major depression single
episode R/O recurrent depression."  The parties agree that "R/O"
means "rule out."  See Joint Statement of Material Facts at 8.

-5-

Chulada suffered from depression.

In addition, there is record evidence that Chulada suffered from post-traumatic stress disorder. <u>See</u> October 28, 1993 psych-med assessment of Dr. Tejwani; November 26, 1993 evaluation report of clinician Paskow; October 1, 1994 discharge summary of clinician Dean M. Brouden. Finally, there is evidence that Chulada, at least periodically, had a suicidal ideation. <u>See</u> October 1, 1994 discharge summary of clinician Brouden; January 1996 admission assessment of Spectrum Addiction Services, Inc.

B.  <u>Evidence of a mid-1997 "Deterioration" in Chulada's Mental Health</u>

There is little to no evidence that Chulada's mental health "deteriorated" after December 31, 1996. While Chulada's depression was described as "major" by Drs. Standow and Martinez in the latter half of 1997, it also was described as "severe" when Chulada was admitted to Spectrum Addiction Services in January 1996. In fact, if anything, the evidence suggests that Chulada's psychological condition <u>improved</u> in 1997.

The record contains several global assessment of functioning ("GAF") scores assigned to Chulada by examining clinicians between November 1993 and August 1997. In his brief, Chulada

explains, without contradiction from the Commissioner, that "[a] GAF score is a subjective determination which represents 'the clinician's judgment of the individual's overall level of functioning,'" including his "'psychological, social, and occupational functioning,'" and that "GAF scores of 55 indicate moderate psychiatric symptoms causing moderate difficulty in social or occupational functioning and scores of 50 indicate serious symptoms in social or occupational functioning." Plaintiff's Motion for Order Reversing the Decision of the Commissioner at 8 (citing and quoting the Diagnostic and Statistical Manual of Mental Disorders at 30, 32 (4th ed. 1994)).

Chulada was assigned GAF scores of 20 on November 26, 1993; 50 on January 11, 1996 (also indicating a GAF score of 50 for the previous year); 50 on January 17, 1996 (also indicating a GAF score of 50 for the previous year); 50 on December 4, 1996 (also indicating a GAF score of 50 for the previous year); 55 on June 5, 1997 (also indicating a GAF score of 50 for the previous year); and 55 on August 13, 1997 (also indicating a GAF score of 85 for the previous year).

C.  Evidence of Drug Dependence On or Prior to December 31, 1996

There is uncontradicted record evidence that Chulada, at

least periodically, suffered from drug dependence on or prior to December 31, 1996. On November 26, 1993, clinician N. Paskow of The Psychological Center diagnosed Chulada with polysubstance dependence. The Psychological Center's October 1, 1994 discharge summary stated that Chulada had polysubstance dependence and opioid dependence. In January 1996, Spectrum Addiction Services diagnosed Chulada with opioid dependence. In his August 6, 1997 report, Dr. Standow notes that Chulada admitted to a prior heroin addiction, and diagnosed Chulada with polysubstance dependence, in remission. In an August 13, 1997 intake statement, Bedford Counseling Associates diagnosed Chulada with "polysubstance dependence 8 mos. sobriety." Dr. Martinez's December 10, 1997 psychological evaluation is to similar effect.

## III.  **RELEVANT LAW**

The standard of review I apply in evaluating Chulada's argument is familiar and can be succinctly summarized. I must uphold the ALJ's determination that Chulada was not disabled prior to December 31, 1996 if there is "substantial evidence," 42 U.S.C. § 405(g), that Chulada was not then precluded from "engag[ing] in any substantial gainful activity by reason of any medically determinable physical or mental impairment which [could

-8-

have been] expected to result in death or which ha[d] lasted for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Substantial evidence exists where "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion," Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citation and internal quotation marks omitted), even where the record can be construed to support another conclusion, see Rodriquez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

In making his disability determination, the ALJ applies a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520 and 416.920. In this case, the first four steps of that process are not in issue, so I proceed directly to an overview of step five. At this point in the process, the Commissioner must show that, despite the impairment or impairments which preclude the claimant from returning to his past relevant work, "there are jobs in the national economy that [the] claimant can perform." Heggarty v. Sullivan, 947 F.2d 90, 995 (1st Cir. 1991) (per curiam). "Although the ALJ should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's

-9-

case in a way that adequately explores the claims, 'the ALJ is responsible in every case to ensure that an adequate record is developed . . . consistent with the issues raised.'" Brunel v. Barnhardt, Civil No. 00-402-B, slip op. at 24-25 (D.N.H. Jan. 7, 2002) (citing and quoting Hawkins v. Chater, 113 F.3d 1162, 1164, 1167 (10th Cir. 1997)). This responsibility, coupled with the fact that "the absence of evidence is not evidence," Thompson v. Sullivan, 987 F.2d 1482, 1491 (10th Cir. 1993), means that a step-five determination that a claimant is not disabled is not supported by substantial evidence where the "claim itself seems on its face to be substantial, where there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the [ALJ], without undue effort, to see that the gaps are somewhat filled." Heggarty, 947 F.2d at 997 (citation and internal quotation marks omitted). The ALJ cannot, however, fill record gaps with findings that are beyond his professional competence; if medical or vocational judgments requiring specialized training are necessary to an informed disability ruling, they must be made by experts. See Nguyen v. Chater, 172 F.3d 31, 35-36 (1st Cir. 1999) (per curiam).

## IV. ANALYSIS

As previously noted, Chulada challenges the ALJ's conclusions that (1) Chulada suffered <u>no</u> function-limiting psychological impairments other than his drug dependence on or prior to December 31, 1996; and (2) Chulada's mental condition "deteriorated" to the point of becoming disabling only on or around July 16, 1997. Chulada asserts that these conclusions are unsupported and that, to the extent that the first conclusion was premised on a finding that Chulada's pre-1997 psychological impairments were attributable to his drug dependence, this finding could not be made without the assistance of a medical advisor. I agree.

It is unclear from his decision why the ALJ determined that Chulada's condition did not become disabling until after his eligibility for DIB had expired. If the ALJ's first conclusion was premised on a finding that Chulada suffered from no psychological impairments at all on or prior to December 31, 1996, the record not only fails to support his conclusion, but it utterly contradicts it. <u>See</u> <u>supra</u> Section II-A. Alternatively, if, as is more likely the case, the ALJ's first conclusion is premised on a finding that Chulada's documented psychological impairments on or prior to December 31, 1996 were attributable to

-11-

his drug dependence and therefore not a proper basis for a benefits award, see, e.g., Bustamante, 262 F.3d 949, 954-55 (explaining the operation of the Contract with America Advancement Act, 42 U.S.C. §§ 423(d)(2)(C) and 1382c(a)(3)(J), which states that "an individual shall not be considered to be disabled for purposes of [benefits under Titles II or XVI of the Act] if . . . drug addiction would (but for this subparagraph) be a contributing factor to the Commissioner's determination that the individual is disabled"), the conclusion rests upon a medical finding which the ALJ cannot make without a supporting opinion from a qualified medical advisor, see Nguyen, 172 F.3d at 35 (collecting cases which emphasize that the ALJ, as a layperson, is not qualified to interpret raw medical data without a supporting medical opinion).  Finally, as I suggested supra in Section II-B, the ALJ's second conclusion lacks substantial evidentiary support.

## IV.  CONCLUSION

When a court finds that the administrative record does not contain substantial evidence supporting the Commissioner's decision, it ordinarily should vacate the decision and remand the matter for further proceedings consistent with the reasoning in

its opinion.  See 42 U.S.C. § 405(g); <u>Seavey v. Barnhardt</u>, \_\_\_ F.3d \_\_\_, 2001 WL 1631477, at * 6 (1st Cir. Dec. 27, 2001).  This is such a case.

While the medical evidence that exists about Chulada's psychological condition prior to 1997 suggests that Chulada's admittedly disabling (as of July 16, 1997) mental conditions were, if anything, more severe on or prior to December 31, 1996, such evidence is not extensive.  Moreover, it is possible that a medical expert would link Chulada's pre-1997 psychological impairments to his non-qualifying drug dependence and opine that such impairments would not have been disabling but for the drug use.  Finally, even if I were to find Chulada's mental illness to have been disabling on or prior to December 31, 1996, I have no grounds for identifying an onset date based on the present record evidence.

Accordingly, I <u>vacate</u> the judgment denying Chulada disability insurance benefits and <u>remand</u> this matter to the Commissioner with instructions that she either identify an onset date prior to Chulada's date last insured and award him benefits or generate evidence that Chulada's disabling (as of July 16, 1997) psychological impairments were not in fact disabling,

-13-

within the meaning of the Act, on or prior to December 31, 1996. The Commissioner's Motion for an Order Affirming the Decision of the Commissioner (document no. 9) is <u>denied</u> and the Plaintiff's Motion for Order Reversing the Decision of the Commissioner (document no. 6) is <u>granted</u>.

The Clerk shall enter judgment accordingly.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

January 31, 2002

cc:  Raymond J. Kelly, Esq.
     David L. Broderick, Esq.

-14-