USCA1 Opinion

 

 [NOT FOR PUBLICATION NOT TO BE CITED AS PRECEDENT]
 United States Court of Appeals
 For the First Circuit

No. 98-2242

 NAIMA ABDUS-SABUR,

 Plaintiff, Appellant,

 v.

 JOHN J. CALLAHAN, Acting Commissioner of the
 Social Security Administration,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Robert W. Lovegreen, U.S. Magistrate Judge]

 Before

 Lynch, Circuit Judge,
 Bownes, Senior Circuit Judge,
 and Lipez, Circuit Judge.
 
 
 
 Donna M. Nesselbush and Green, Greenberg & Nesselbush on brief
for appellant.
 Margaret E. Curran, United States Attorney, Michael P.
Iannotti, Assistant United States Attorney, and Sara Gardiner
Kilkenny, Assistant Regional Counsel, Social Security
Administration, on brief for appellee.

July 27, 1999

 
 
 Per Curiam. Claimant Naima Abdus-Sabur challenges a
 decision of the Acting Commissioner of Social Security
 ("Commissioner") denying her applications for disability
 insurance benefits and supplemental security income benefits. 
 For the following reasons, we think that a remand is required.
 Claimant applied for benefits alleging that chronic
 fatigue syndrome ("CFS") and osteoarthritis disable her from
 working. After a hearing, an administrative law judge ("ALJ")
 concluded that the evidence fails to establish a diagnosis of
 CFS. The ALJ found that claimant suffers from mild arthritis,
 arthralgias, myalgias, and possible CFS, and that her condition
 is severe. However, the ALJ denied disability at step four of
 the sequential analysis, concluding that claimant is capable of
 light work activity and can perform her past relevant jobs as
 a cleaner or as a receptionist. 
 The Appeals Council denied review, thereby making the
 decision of the ALJ the final decision of the Commissioner. 
 Claimant then sought judicial review. The parties consented to
 have the case decided by a magistrate judge, see 28 U.S.C. 
 636(c), who upheld the denial of benefits. This appeal
 followed. 
 Judicial review of the Commissioner's decision is
 authorized by 42 U.S.C. 405(g) and 1383(c)(3). "Our review
 is limited to determining whether the ALJ deployed the proper
 legal standards and found facts upon the proper quantum of
 evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). 
 The ALJ's findings of fact are conclusive when supported by
 substantial evidence and reached through the correct legal
 standards. See id.; 42 U.S.C. 405(g), 1383(c)(3).
 In the instant case, claimant testified that she
 suffers from chronic sore throats, upper respiratory
 infections, low grade fevers, swollen glands, pain all over her
 body, severe fatigue, and disrupted sleep. She testified that
 she has difficulty sitting or standing for long periods of
 time, that she cannot write because her fingers "won't work,"
 and that she drops things because she cannot grasp. She also
 testified that she has to lie down frequently, and that the
 pain is sometimes so great that she stays in bed all day.
 As for her activities, claimant testified that she
 can drive, though, she said, "it's difficult sometimes." She
 stated that she manages grocery shopping with the help of her
 daughter, and that she does some cleaning (though not the
 "major parts"). She also stated that she cooks, but that it's
 usually "microwaveable stuff." She attends worship services at
 her mosque, when she can. 
 Claimant's own physicians--Dr. Gonsalves and Dr.
 Clough--have diagnosed her as suffering from CFS and they have
 indicated that her physical capacities are quite limited. The
 most liberal assessment by Dr. Gonsalves is that claimant is
 capable of sitting and standing in combination for no more than
 four hours. Dr. Clough indicated that claimant is capable of
 sitting and standing in combination for less than one hour. 
 Both Drs. Gonsalves and Clough have also indicated that
 claimant has various non-exertional limitations including,
 inter alia, an inability to use her hands for repetitive
 motion.
 Claimant was also examined by two physicians in
 connection with her applications for benefits. Dr. Pharmakidis
 examined claimant on June 3, 1993. He wrote that, given her
 history and "unremarkable" physical examination, he would "have
 a great deal of difficulty to make a statement" that she has
 CFS. Dr. Robin conducted a mental examination on September 1,
 1993. He diagnosed claimant as suffering from major depression
 but indicated the need to rule out CFS. 
 In addition, Dr. Pella, a non-examining physician,
 reviewed the medical record and testified at the hearing. Dr.
 Pella addressed whether claimant meets the criteria established
 by the Centers for Disease Control and Prevention ("CDC") for
 CFS. He opined that "the diagnosis [of CFS] is not established
 from the record as yet." Among other things, Dr. Pella stated
 that there is little in the way of physical findings in the
 record. When asked to explain what physical findings he was
 referring to, Dr. Pella stated that the "soft ones" are
 "pharyngitis [inflammation of the throat], lymphadenopathy
 [disease of the lymph nodes], and documented fever."
 In reaching his conclusion that a diagnosis of CFS is 
 not substantiated, the ALJ relied heavily on "Dr. Pella['s]
 state[ment] that the claimant failed to meet the CDC criteria
 for a diagnosis of [CFS]." In justifying his conclusion as to
 claimant's residual functional capacity, the ALJ also relied,
 in part, on the testimony of Dr. Pella, whom, the ALJ stated,
 "maintained that the claimant was capable of performing light
 work activity." The ALJ explained that he discredited
 claimant's allegations as to the severity of her symptoms in
 light of the fact that "the record fails to clearly document
 that claimant meets the CDC criteria for [CFS]." He also
 relied on evidence in the record that claimant "still manages
 to cook, clean, do laundry, go grocery shopping, attend
 [religious services], and teach a class at her [mosque] once a
 week." 
 As an initial matter, we note that the Social
 Security Administration has recently issued a ruling designed
 to "restate" and "clarify" the policies of the Administration
 for evaluating CFS cases. See SSR 99-2p, "Titles II and XVI:
 Evaluating Cases Involving Chronic Fatigue Syndrome." The
 ruling issued after this appeal was submitted. In a post-
 briefing filing, claimant suggests without developed
 argumentation that the new ruling applies. In a response, the
 Commissioner takes the contrary position. We need not resolve
 the issue because we have concluded that, under the peculiar
 circumstances of this case, a remand would be required in any
 event. 
 The new ruling is helpful, however, insofar as it
 provides a summary of the current CDC working case definition
 of CFS. Of particular note, the current definition--which was
 revised in late 1994--is entirely symptom based. See SSR 99-
 2p. By contrast, the earlier (1988) definition included
 certain "physical criteria," namely, low-grade fever, palpable
 or tender lymph nodes, and inflammation of the throat, in
 addition to a list of symptoms. See Report to the Senate
 Appropriations Committee for the Departments of Labor, Health
 and Human Services, Education and Related Agencies on the
 Social Security Administration's Activities Relating to Chronic
 Fatigue Syndrome (March 1991), included as an attachment to Fay
 E. Fishman, Chronic Fatigue Syndrome and Social Security
 Disability, 42 West's Social Security Reporting Service 789,
 808-10. 
 Claimant suggests that Dr. Pella and Dr. Pharmakidis
 employed out-moded CFS guidelines. We agree that this is a
 serious possibility. The CDC definition of CFS was revised
 just months before the hearing, so it would not be surprising
 if Dr. Pella were unaware of the changes. In elaborating on
 what he thought is absent from the present record but needed in
 order to establish a diagnosis of CFS, Dr. Pella appears to
 refer to the "physical criteria" included in the 1988
 definition but dropped from the 1994 revised definition. It is
 safe to assume that Dr. Pharmakidis did not employ the current
 definition since his opinion was rendered while the old
 definition was in effect.
 The Commissioner, while not taking issue with the
 possibility that these doctors employed out-moded guidelines,
 nonetheless contends that it does not matter. In particular,
 the Commissioner suggests that, since the ALJ found that
 claimant suffers from "possible" CFS and continued on to
 evaluate her residual functional capacity, the outcome would
 have been the same. The Commissioner further argues that there
 is substantial evidence to support the finding that claimant is
 capable of light work, including evidence as to her activities. 
 Contrary to this suggestion, we do not think that we
 can conclude that the ALJ would have reached the same ultimate
 conclusion. In rejecting the physical capacity assessments of
 Drs. Clough and Gonsalves, as well as claimant's own statements
 about the severity of her symptoms, the ALJ relied on his
 intermediate conclusion that the diagnosis of CFS is not
 substantiated. Because CFS can be a very debilitating disease
 with symptoms out of proportion with any objective evidence,
 see Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994), the ALJ's
 ultimate conclusion might have been different if his
 intermediate conclusion had been different. Indeed, a finding
 that claimant has CFS might have had some impact on the ALJ's
 evaluation as to whether her level of activity indicates an
 ability to work. Cf. Reddick v. Chater, 157 F.3d 715, 722 (9th
 Cir. 1998) (recognizing that a pattern of sporadic activities
 punctuated with a need for rest is fully consistent with CFS);
 Cohen v. Secretary of Health & Human Servs., 964 F.2d 524, 530-
 31 (6th Cir. 1992) (similar).
 A final consideration is whether we can affirm on the
 basis stated by the magistrate judge. We think not even if we
 assume without deciding that claimant could otherwise be found
 "not disabled" based on a capacity for part-time work. In
 reaching his conclusion, the magistrate judge relied on a
 physical capacity assessment of Dr. Gonsalves which indicates
 that claimant can sit and/or stand in combination for up to
 three hours but also indicates that she has non-exertional
 limitations. There is no evidence in the record as to whether
 the non-exertional limitations are compatible with claimant's
 past relevant work. Nor is there any evidence as to whether
 other work is available for someone with these non-exertional
 limitations.
 In sum, in light of the uncertainty as to whether Dr.
 Pella evaluated the medical record under the current CDC
 guidelines, and the certainty that Dr. Pharmakidis did not, we
 are unable to conclude that their opinions constitute
 substantial evidence to support the ALJ's decision. Nor are we
 able to conclude with confidence that the ALJ's decision would
 have been the same if these physicians had employed current
 guidelines and reached a different decision as to whether
 claimant has CFS. Accordingly, the judgment of the district
 court is vacated and the case is remanded to the district court
 with instructions to remand to the Commissioner for further
 findings and/or proceedings not inconsistent with this opinion.
 Vacated and remanded.