Audette v. SSA                    CV-04-178-JD  11/17/04

UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE

Mary D. Audette

     v.                              Civil No. 04-178-JD
                                     Opinion No. 2004 DNH 163
Jo Anne B. Barnhart, Commissioner,
Social Security Administration


                           O R D E R


     Mary D. Audette seeks judicial review, pursuant to 42 U.S.C.
§§ 405(g) and 1383(c)(3), of the Commissioner's decision denying
her application for Social Security Disability Benefits and
Supplemental Security Income.  The Commissioner denied her
application in 2000.  On judicial review in 2002, that decision
was reversed and remanded for further administration proceedings,
whereupon the Commissioner again denied Audette's application.
Audette contends that the Administrative Law Judge ("ALJ") failed
to comply with the remand order and that the decision is again
legally and factually deficient.  The Commissioner moves to
affirm the decision.


                          Background

     Mary D. Audette worked as a child care provider until she
developed back pain and was unable to work after May 31, 1997.
She was forty years old at that time.  She is a high school
graduate and has a certificate in early childhood education.

A.  Medical Background

From 1997 through 2003, Audette was treated by Dr. Lon Howard, an orthopedist.  After evaluating her test results in February of 1997, Dr. Howard diagnosed herniated discs at L4-5, L5-S1, and possibly L3-4.  He prescribed treatment of bed rest, no sitting, lifting or bending, and medications of Darvocet, Relafen, Naprosyn, Keflex, and Prednisone.

Audette underwent a laminectomy and discectomy at L4-5 and L5-S1.  Dr. Howard continued her medication regimen and then added Medrol, Elavil, Parafon Forte, and Ultram.  She used a walker and was instructed to begin physical therapy.  She felt better after six weeks and began walking again.  In September 1997, however, she returned to Dr. Howard because of significant back pain radiating into her left leg.  Dr. Howard prescribed medication, a lumbrosacral corset, and pool therapy.  Audette continued to report pain at subsequent appointments, and Dr. Howard continued to treat her symptoms with medication and physical therapy.  Dr. Howard also prescribed use of a home TENS unit, which provided some pain relief.  In May of 1998, Audette reported that she could sit for two hours at a time and walk half a mile and that her other pain symptoms had decreased.

In June of 1998, Audette was seen by Dr. Elijah W. Stommel, a neurologist.  He noted that she was still having muscle spasms

2

in her left leg and buttocks, that she was taking Naprosyn, Chlorozazone, and Elavil, and that she was attending physical therapy.  On examination, Dr. Stommel found tenderness to palpitation in her lower spine, and moderately diminished reflexes in her left ankle, but otherwise normal results.  He recommended that Audette lose weight and continue physical therapy.

At the end of June 1998, Audette saw Dr. Andrew Forrest, of Littleton Orthopedics, who found that she had a diminished range of motion in her lumbar spine but no muscle spasms or reduced strength.  He diagnosed spinal stenosis, a narrowing of the vertebral canal, post surgery, with evidence of radiculopathy at L4 and S1.  He recommended that she continue physical therapy and use a cane to walk.  At her follow-up appointment in September, Dr. Forrest diagnosed chronic lumbar pain syndrome with spinal stenosis and L4 and S1 radiculopathies.  Dr. Forrest found the same symptoms in July of 1999.

Audette continued to see Dr. Howard who found that her left leg was weaker than her right and that she continued to have pain in her back and left leg.  She could no longer use the TENS unit because it was not covered by Medicaid.  In March of 1999, Dr. Howard wrote that he did not think Audette was able to work.

In January and August of 1999, two non-examining state

3

agency physicians completed physical residual functional capacity assessments of Audette based on her records. They both concluded that she could lift less than ten pounds frequently, could occasionally lift ten pounds, and had an unlimited ability to push and pull. They found that she could stand for at least two hours and could sit for at least six hours in an eight hour work day. They also found that she had occasional limitations in her ability to climb, balance, stoop, kneel, crouch, and crawl.

In November of 2000, Audette again saw Dr. Howard because of pain in her back and leg. She described pain radiating from her back to her left leg and that she had weakness and numbness in her leg. Dr. Howard noted disc degeneration and sciatica. After visits in January and February of 2001, Dr. Howard decided that Audette definitely needed a TENS unit at home. She was continuing physical therapy, using an ankle brace, and taking Celebrex, Ultram, Flexeril, and Parafon Forte. In March, Dr. Howard diagnosed disc degeneration and sciatica and chronic sprain of the left ankle. She continued to report pain and continued treatment with physical therapy and medication. In May, Dr. Howard recommended that she use crutches again.

In July of 2001, Audette saw Dr. Howard because her left leg gave out and she fell down eight stairs. X-rays showed disc space narrowing at L4-5 and L5-S1. He continued to recommend

4

medication and physical therapy.  Audette saw Dr. Howard in August because of back pain and her left knee giving way.  Dr. Howard continued to recommend use of the TENS unit, but Audette reported difficulty getting the cost covered by Medicaid.

Audette saw Dr. Howard again in April of 2002 with continued complaints of back pain and also neck pain after falling off of a powered scooter in her back yard.  He prescribed a cervical collar.  Examination showed tenderness and spasm in the paraspinal muscles, decreased range of motion in the cervical spine, tenderness and spasm in the lumbar region, and positive results on straight leg raising, indicating pain.  In June of 2002, Audette reported that her neck and back were better and that the symptoms in her left leg had subsided.  Her motor examination still showed positive signs for pain in the left back and leg but also that she was stronger.  Her symptoms continued to improve in August.  In October, Audette reported pain in her back and leg that was relieved with medication and physical therapy.  Dr. Howard recommended that Audette have a functional capacity evaluation.

An occupational therapist and physical therapist conducted a functional capacity evaluation on November 7, 2002.  They concluded that Audette could perform work at the sedentary level.  They found that she could lift ten pounds or less, sit for one

5

hour intervals with a change of position, stand for thirty-five minute intervals with a change in position, and walk for seven minute intervals with a change in position. They found that she had a lower than average finger dexterity, less than average lifting ability, poor posture, decreased lumbar range of motion, decreased cervical spine range of motion, decreased left arm strength and range of motion, decreased trunk mobility and pain, difficulty squatting, and was seventy percent above her ideal body weight. They recommended referral to a pain clinic, vocational rehabilitation, a weight loss program, and a physical examination. In November and December of 2002, Dr. Howard noted that Audette lacked a capacity to work at that time.

At her appointment in February of 2003, Audette reported a fair amount of pain. Dr. Howard noted that she had been to physical therapy once since the last appointment. He recommended that she resume physical therapy and resume taking her medications. In March, she was advanced to a home physical therapy program. She continued to take Flexeril, Celebrex, Elavil, and OsCal. In April of 2003, x-rays showed disc degeneration at L4-5, L5-6, and L6-7 with osteophyte formation at L5-6. Dr. Howard found no instability or loss of motion.

B.  <u>First Decision</u>

A hearing was held on January 28, 2000, before ALJ Ruth Kleinfeld.  Audette was represented by Dona Larsen, a paralegal from New Hampshire Legal Assistance.  A vocational expert, Howard Steinberg, also testified.

Audette testified that she was then taking Elavil, Bactrim, and Carafate, which caused no side effects, and that she had taken Prednisone, which caused weight gain.  She described constant pain in her spine extending into her left leg with varied intensity from shooting pain to a dull ache.  On the three days out of the week when the pain was worse, she could only stay still and lie down because standing made the pain worse.  She testified that she watched television, used the computer, crocheted a little, and read.  She sat in a reclining position while doing those activities but also needed to walk every ten or fifteen minutes to change position.

She testified that she needed help with household chores but that she could cook for herself.  She said that she had trouble climbing stairs and that she did not carry things.  She also testified that she did not drive or have a driver's license. Family members helped her get around and do grocery shopping.

The vocational expert testified that if Audette were limited to light work with a sit/stand option, she would not be able to

7

do her past work in child care.  In response to the ALJ's hypothetical example, the vocational expert testified that jobs as a companion and a security guard would be available. Audette's representative proposed a hypothetical that would require her to be absent up to three days a week, which the ALJ said would preclude all work, without allowing a response from the vocational expert.

In her decision, the ALJ found that Audette had the residual functional capacity to do a full range of light and sedentary work except that she could not lift more than ten pounds occasionally and five pounds frequently, would need to sit or stand at will, and would need to rest her legs on a chair or couch.  The ALJ also found that Audette was not fully credible as to her complaints of pain, based primarily on certain findings as to Audette's daily activities.  The ALJ concluded that the vocational guidelines, along with the vocational expert's testimony, directed a conclusion that Audette was not disabled.

After Audette sought judicial review of the decision, the parties filed a joint motion to reverse and remand the decision. The court granted the motion, ordering the ALJ to consider Dr. Howard's opinion as to Audette's ability to work, to re-evaluate her credibility assessment, addressing the Avery factors, and to

re-evaluate her residual functional capacity assessment.[1]  On remand, the Appeals Council vacated the decision and directed that the case be assigned to an ALJ to hold a hearing.  The Appeals Council also pointed out factual errors and significant omissions.  The Appeals Council directed the ALJ to consider Dr. Howard's opinion about Audette's ability to work, to re-evaluate her credibility using the Avery factors, to support the assessment with evidence from the record in accord with 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 96-7p, and to evaluate her residual functional capacity with an appropriate rationale and specific references to the record evidence.

C.  Second Decision

On remand, the case was assigned to ALJ Edward G. Hoban.  A hearing was held on April 18, 2003.  Audette was again represented by Dona Larsen.  Howard Steinberg again testified as the vocational expert.

Audette testified that her back was the same as it was at the last hearing.  She described pain in her lower back, left

---

[1] The record includes only the first page of the motion with the court's margin order at the bottom, indicating that four issues were to be considered by the ALJ.  The fourth issue was on the second page which was not provided in the record in this case and is not available through court records.

leg, and the top of her neck.  She said that she had been diagnosed with osteoporosis and arthritis in her neck and shoulders since the last hearing.  She said that she had not done much walking since May of 2001 and that walking then brought on pain.  She also said that her left leg was weak so that she needed to sit after five or ten minutes of standing and that she used a cane.

In terms of daily activities, Audette testified that she used the computer and watched television and that she could sit for an hour to an hour and a half.  She also crocheted but would have to stop after fifteen to thirty minutes because of pain in her hand.  She could cook and do some housework except that two or three days each week, she would not be able to do anything because of pain.  She was taking Flexeril, Ultram, Elavil, and Darvocet for pain, although no medication completely took the pain away.  She testified that she had tried Percocet and Vicodin for pain but did not like the way they made her feel.  She said that the TENS unit helped her pain.  Audette testified that she did not drive.

The ALJ described Audette's limitations and residual functional capacity as the ability to lift ten pounds occasionally and five pounds frequently, stand or walk for two hours in an eight-hour day, sit for six hours in an eight-hour

10

day, push and pull without limitations, and do postural activities occasionally. The vocational expert testified that such a person could not do Audette's previous work as a child care provider, but that she could work in assembly jobs, as a security monitor, as a cashier, and as a charge account clerk. The ALJ then added the residual functional capacity provided through the evaluation done on Dr. Howard's referral, which found a work capacity at the sedentary level, an ability to sit for one hour intervals, to stand for thirty-five minute intervals, to walk for seven minutes, and certain range of motion, dexterity, and grip limitations in the left hand. The vocational expert responded that Audette could still work as a cashier, charge account clerk, and security monitor. When asked if Audette would be able to work with the added limitations of a need to lie down twice a day or to sit with her feet elevated, the vocational expert responded that no jobs would fit that description.

In his decision issued on October 16, 2003, the ALJ found that Audette's claim of disabling pain was not credible for the same reasons that the previous ALJ found. The ALJ considered Dr. Howard's opinion but concluded that it was not entitled to controlling weight because it was based on Audette's subjective complaints and was inconsistent with other functional capacity assessments. He found that Audette retained the residual

11

functional capacity for a full range of sedentary work except that she could only occasionally use her left hand to grasp or manipulate objects. Relying on the vocational guidelines and the vocational expert's testimony, the ALJ concluded that Audette was not disabled. The Appeals Council denied Audette's request for review.

## Discussion

Audette contends that the ALJ failed to properly evaluate her credibility in violation of the court's remand order and the direction from the Appeals Council. She also contends that the ALJ erred in giving controlling weight to the opinion of the state agency physician and in relying on the vocational expert's testimony in response to a hypothetical that did not incorporate all of her limitations. The Commissioner argues that substantial evidence exists in the record to support the ALJ's decision.

The court must uphold a final decision of the Commissioner denying benefits unless the decision is based on legal or factual error. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877, 885 (1989)). The Commissioner's factual findings are conclusive if based on substantial evidence in the record. 42 U.S.C. § 405(g); Nguyen

12

v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). In making the disability determination, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

Because a claimant's impairments may be greater due to pain than the objective medical evidence would otherwise suggest, an ALJ must also consider a claimant's subjective complaints of pain. 20 C.F.R. §§ 404.1529(c)(1) & 416.929(c)(1); Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 21 (1st Cir. 1986). The ALJ is required to consider the claimant's descriptions of her daily activities; the location, duration, frequency, and intensity of her pain; the type and amount of any medications she is taking or has taken for pain or other symptoms; other treatments she has received or is receiving for pain or other symptoms; any measures she is using or has used to relieve pain, and other information about her limitations and restrictions due to pain or other symptoms. §§ 404.1529(c)(3) & 416.929(c)(3). In the ALJ's decision, he must provide specific reasons for the

13

credibility findings as to each of the required factors, supported by references to the evidence of record. S.S.R. 96-7p, 1996 WL 374286, at *4 (July 2, 1996). The ALJ's credibility finding "cannot be based on an intangible or intuitive notion about an individual's credibility . . . [and] [i]t is not sufficient to make a conclusory statement . . . [or] simply to recite the factors that are described in the regulations for evaluating symptoms." Id.

ALJ Kleinfeld's credibility assessment did not meet those requirements. She wrote only the following evaluation:

> The undersigned has considered the claimant's subjective assertions of disabling pain, but she cannot be accepted as fully credible. The claimant is able to work on her computer, crochet, read and watch television as well as do some shopping and driving by her own description. She does not take strong pain medication and she has not presented evidence of recent treatment. Considering the nature of the claimant's treatment, precipitating and aggravating factors, treatment including medication, the undersigned concludes that the claimant retains the residual functional capacity to perform light and sedentary work as set forth above.

AR at 24. On remand, the Appeals Council pointed out the factual errors in ALJ Kleinfeld's findings: Audette could not drive; she did not shop on her own but instead had help, and she was taking Darvocet, Flexeril, Naprosyn, Parafon, and Elavil for her pain and other symptoms. Because of the ALJ's errors in assessing Audette's credibility, the Appeals Council directed that

14

Audette's credibility be re-evaluated, "addressing all of the factors set out in <u>Avery v. Secretary of Health and Human Services</u>, 797 F.2d 19 (1st Cir. 1986) and in Social Security Ruling 96-7p."  AR at 286.

In response to the remand, ALJ Hoban heard evidence from Audette about her pain at a second hearing.  Despite that testimony and the clear directions from the Appeals Council and this court, ALJ Hoban made the following "re-evaluation" of Audette's credibility:

> The undersigned has considered the claimant's subjective assertions of disabling pain, but she cannot be accepted as fully credible.  The claimant is able to work on her computer, crochet, read and watch television as well as do some shopping and driving by her own description (Exhibit 11F).  Activities, such as extensive walking, performed after her date last insured do not support her complaints.  As noted, her treatment history does not fully support her complaints.  To the contrary, she has a history of a positive response to treatment and acknowledged this to treating sources.  She does not take strong pain medication.  She has not presented evidence of recent treatment.  Considering the nature of the claimant's treatment, precipitating and aggravating factors, treatment including medication, the claimant's functional restrictions and her daily activities, the undersigned concludes that the claimant retained the residual functional capacity to perform a range of sedentary work as set forth above.

AR at 243.

As the Appeals Council pointed out, Audette could not and did not drive; she could not and did not do shopping by herself,

15

and she was taking strong medication at the time of the first hearing, which she testified she was still taking at the time of the second hearing. Exhibit 11F, cited by ALJ Hoban, does not support his findings. The medical records show that Audette was treated by Dr. Howard continuously throughout the period with her last appointment just a month before the second hearing, contrary to ALJ Hoban's finding that she did not present evidence of recent treatment. Without explanation, it is not apparent what relevance the finding that Audette responded positively to treatment would have to her complaints of pain. Further, other than the apparently incorrect reference to Exhibit 11F, ALJ Hoban failed to provide citations to the record to support his findings and merely recited several of the factors in a conclusory manner without articulating specific reasons for his findings.

Unfortunately, ALJ Hoban ignored the direction of this court and the Appeals Council and recited the erroneous findings made by ALJ Kleinfeld, along with a few additional findings of dubious value. The credibility finding is essential to ALJ Hoban's decision because whether Audette retains a functional capacity for work, as described by the assessments in the record, or cannot work, as she contends, depends on her credibility as to her complaints of pain. Given the insufficient and factually erroneous evaluation provided by ALJ Hoban, the case again must

16

be remanded for further administrative proceedings.

Audette asks that the court simply reverse the Commissioner's decision and award her benefits. The claimant's credibility is within the province of the Commissioner, is fact-based, and has not yet been properly assessed, which precludes a final resolution of the claim here. See Seavey, 279 F.3d at 11. Because remand is necessary to address the credibility issue and the other issues Audette raises may also be re-evaluated on remand, those issues are not reviewed here.

It is unfortunate that this matter must be remanded for a second time because of errors made in the administrative process. This has resulted in delaying final resolution of the matter for the claimant and has unnecessarily consumed the resources of the claimant and the court. On remand, the court expects this matter to be handled promptly and competently.

## Conclusion

For the foregoing reasons, the plaintiff's motion to reverse (document no. 6) is granted to the extent that the Commissioner's decision is reversed and the case is remanded for further administrative proceedings. The Commissioner's motion to affirm (document no. 7) is denied.

17

As this is a "sentence four" remand, the clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

November 17, 2004

cc:  Jonathan P. Baird, Esquire
     David L. Broderick, Esquire