Israel **VELEZ–RAMOS,** Plaintiff,

v.

Michael J. **ASTRUE, Commissioner of Social Security,** Defendant.

Civil Action No. 07–1861 (GAG).

United States District Court,
D. Puerto Rico.

June 13, 2008.

Salvador Medina–De–La–Cruz, Salvador Medina De La Cruz Law Office, San Juan, PR, for Plaintiff.

Ginette L. Milanes, United States Attorneys Office, District of Puerto Rico, San Juan, PR, for Defendant.

## OPINION AND ORDER

GUSTAVO A. GELPÍ, District Judge.

Plaintiff Israel Velez–Ramos filed this action on February 28, 2001, pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for disability insurance benefits. Both parties have filed their respective memoranda of law. (Docket Nos. 6 and 9). Upon careful review of the parties' submissions and the administrative record, the Court concludes that the Administrative Law Judge ("ALJ") below erroneously failed to obtain the services of a vocational expert in order to determine the existence of jobs in the national economy that plaintiff could perform. The Commissioner's final decision is therefore **VACATED**. The Court **REMANDS** this case for further proceedings consistent with this opinion and order.

## I. Standard of Review

■ Judicial review of the Commissioner's denial of disability benefits is limited in scope. The Court's only tasks are to ensure that the final administrative decision is supported by substantial evidence of record and to determine whether the correct legal standard was used. 42 U.S.C. § 405(g); *see also Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir.2001). The term "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). If the Court finds the determination to be supported by substantial evidence of record, then the Commissioner's findings must be upheld, even if the Court disagrees with them or would have found otherwise under a *de novo* standard of review. *See Lizotte v. Sec'y of Health & Human Servs.*, 654 F.2d 127, 128 (1st Cir. 1981). The Commissioner's findings, however, are not conclusive "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999).

## II. Procedural Background

Plaintiff filed an application for disability and disability insurance benefits on Febru-

ary 28, 2001, alleging that he had been disabled since April 9, 1999, due to depression, arthritis, diverticulitis, and an inguinal hernia. (Tr. 21, 62–64, 101.) The SSA initially denied his application. (Tr. 31–37.) On reconsideration, the SSA determined that he had been disabled as of March 1, 2001. (Tr. 39–44.) Plaintiff was not satisfied with the award and requested a hearing. (Tr. 45.) On August 5, 2005, plaintiff filed a motion to waive his appearance at the administrative hearing. (Tr. 60.) The SSA held the hearing on August 30, 2005; plaintiff's attorney was present. (Tr. 274–77.) The ALJ issued his decision on October 12, 2005. He found, after a *de novo* review of the evidence, that plaintiff was not disabled between April 9, 1999 and February 28, 2001. (Tr. 15–27.) The Appeals Council denied plaintiff's request for review, (Tr. 4–10), making the Commissioner's hearing decision final, 20 C.F.R. §§ 404.955, 404.981. Plaintiff has exhausted his available administrative remedies, and the case is now ripe for judicial review under Section 405(g).

## III. Factual Background

Plaintiff was between sixty and sixty-two years old during the relevant period in which he could be found disabled, and he completed the eleventh grade. (Tr. 25, 107.) Plaintiff performed his past relevant work as a janitor for the Puerto Rico school system. (Tr. 25, 110–12.) Eventually, plaintiff's ability to work became limited because he was nervous, anxious, de-

pressed, and afraid. He also had difficulty sleeping, forgot things, and could not concentrate. Plaintiff also had an inguinal hernia, arthritis, and diverticulitis. (Tr. 101.) Plaintiff received medical treatment for his various impairments from Clinica Española, the State Insurance Fund, and Behavioral Health Center of the West.

Plaintiff visited Clinica Española on three separate occasions for treatment of a recurrent hernia. (Tr. 121–30.) He last had surgery to repair his recurrent hernia on September 22, 1999. (Tr. 121–22.) In post-surgery follow up visits, his doctors observed that he had pain in the operated area. (Tr. 134–35, 137–38, 140–42, 144, 149, 152.) The treating physician found a soft bulging on November 1999, suggestive of early recurrence. (Tr. 138.)

Plaintiff underwent a Psycho-diagnostic Evaluation at the Behavioral Health Center of the West, his psychiatric treating source, on August 1, 2000. (Tr. 217–25.) The provider noted that plaintiff complained of difficulty sleeping and forgetfulness. (Tr. 218.) The provider also observed that plaintiff's affect was depressed and anxious, he was irritated with anger, he appeared sad and hostile (Tr. 223), and his attention and concentration were diminished; however, his judgment was regular (Tr. 224). Plaintiff was diagnosed with a major depression with psychotic traits and hallucinations and assessed a Global Assessment of Functioning of 40.[1] (Tr. 225.)

---

1. A GAF score represents the subjective determination based on a scale of 1 to 100 of a clinician's judgment of an individual's overall level of functioning. A score of 31–40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequent-

ly beats up younger children, is defiant at home, and is failing at school)." A score of 41–50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32–34 (4th ed. text rev.2000).

On August 9, 2000, Dr. Antonio Aponte Gracia, an internal medicine specialist, examined plaintiff as a medical consultant for the Disability Determination Program. (Tr. 157–60.) He diagnosed a depression disorder and chronic low back pain, making reference to plaintiff's inability to stand and walk for more than an hour. (Tr. 154, 156.)

On referral from Disability Determination Services, Dr. Alberto Rodriguez Robles performed a consultative psychiatric examination dated September 7, 2000. (Tr. 201–06.) Dr. Rodriguez assessed plaintiff's social functioning and noted he keeps isolated and withdrawn, is always irritated, and does not like to share with people. (Tr. 204.) On examination, the doctor observed that plaintiff's mood was depressed, his affect was restricted, his thought flow was slow, and his attention and concentration were diminished. He also observed low self esteem and ideas of hopelessness and despair. Dr. Rodriguez diagnosed plaintiff with major depression with a reserved prognosis and assessed that plaintiff was not able to handle his own funds. (Tr. 206.) Subsequently, on June 6, 2001, Dr. Rodriguez again examined plaintiff's psychiatric condition, and his diagnosis remained the same. (Tr. 198–99.)

Dr. Ledesma, a non-examiner, stated that plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, and sit and stand/walk for six hours each in an eight hour day. (Tr. 183.)

Dr. De La Iglesia completed a Psychiatric Review Technique form on October 27, 2000. The form stated that plaintiff had moderate restrictions in his activities of daily living and moderate difficulties with his social functioning and ability to maintain concentration, persistence, and pace. (Tr. 178.) He further noted that plaintiff had moderate limitations in his ability to understand, remember and carry out detailed instructions, maintain concentration and attention for extended periods, perform activities within a schedule, complete a normal workweek, interact appropriately with the general public, accept instruction or criticism from a supervisor, and respond to changes in the work setting. (Tr. 163–64.)

Dr. Umpierre completed a Psychiatric Review Technique form on June 25, 2001, for the period between April 1999 and June 2001. The form stated that plaintiff had moderate restrictions in his activities of daily living and moderate difficulties in his social functioning and ability to maintain concentration, persistence, and pace. (Tr. 243, 253.) The doctor further stated that he had moderate limitations in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, complete a normal work week, request assistance, accept instructions or criticism from supervisors, get along with coworkers, and respond to changes in the work setting. (Tr. 257–58.)

## IV. Analysis

■ Plaintiff argues that the ALJ erred in relying solely on the Medical Vocational Guidelines ("the Grid"), 20 C.F.R. pt. 404, subpt. P, app. 2, to determine whether he remained able to perform work in the national economy. The burden fell upon the Commissioner to demonstrate that plaintiff could perform work other than his past relevant work. *See Ortiz v. Sec'y of Health & Human Svcs.*, 890 F.2d 520, 524 (1st Cir.1989) (acknowledging demonstration of severe impairment shifts burden to Secretary to demonstrate existence of other job in national economy plaintiff can perform). The Grid enables the Commissioner to satisfy the burden of proof in a streamlined fashion without relying upon

the live testimony of a vocational expert. *See Sherwin v. Sec'y of Health & Human Svcs.*, 685 F.2d 1, 4 (1st Cir.1982). Use of the Grid, however, is not appropriate in certain circumstances. In cases where the claimant suffers from nonexertional as well as exertional impairments,[2] the Grid may not accurately reflect the available of work he can perform. *See Heggarty v. Sullivan*, 947 F.2d 990, 996 (1st Cir.1991); *Ortiz*, 890 F.2d at 524. Whether the Commissioner may rely upon the Grid in a nonexertional impairment case depends upon whether "the nonexertional impairment 'significantly affects [a] claimant's ability to perform the full range of jobs' at the appropriate strength level." *Heggarty*, 947 F.2d at 996 (quoting *Lugo v. Sec'y of Health & Human Svcs.*, 794 F.2d 14, 17 (1st Cir.1986) (per curiam)) (alteration in original). If a nonexertional impairment significantly erodes the claimant's occupational base, then the Commissioner may not rely upon the Grid to carry the burden of proving the availability of other jobs the claimant can perform. The Commissioner must demonstrate the availability of jobs through means other than the Grid, typically through use of a vocational expert. *See, e.g., Heggarty*, 947 F.2d at 996; *Ortiz*, 890 F.2d at 524.

▮ Here, plaintiff was diagnosed with major depression, diminished attention and concentration, inability to handle his own funds, and chronic back pain that prevented him from standing or walking for more than one hour. His treating physician assessed GAF score of 40, an extremely low assessment. All the examining medical sources assessed very significant nonexertional limitations, both mental and physical. Those nonexertional limitations, in combination with exertional limitations, warrant the assessment of a vocational expert. Accordingly, applying the rule clarified in *Heggarty*, the Court concludes that the ALJ should have called a vocational expert to determine the existence of jobs in the national economy that plaintiff could perform. The ALJ erred in relying solely upon the Grid in determining that plaintiff was not disabled.

## V. Conclusion

After reviewing the administrative record, the parties legal memoranda, and the applicable law, the Court finds that the Commissioner's denial of disability benefits was not supported by substantial evidence. The Court **REMANDS** this case so that the ALJ can consider a vocational expert's testimony and for further proceedings consistent with this opinion.

**SO ORDERED.**

---

2. Exertional limitations affect a claimant's ability to meet the strength demands of jobs. Nonexertional limitations affect a claimant's ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling. 20 C.F.R. § 404.1569a.