Ovidio **NEGRÓN**, Plaintiff,

v.

Michael J. **ASTRUE**, Commissioner of the Social Security Administration, Defendant.

Civil No. 11–2100(BJM).

United States District Court, D. Puerto Rico.

March 20, 2013.

Salvador Medina–De–La–Cruz, Salvador Medina De La Cruz Law Office, San Juan, PR, for Plaintiff.

Ginette L. Milanes, U.S. Attorney's Office, San Juan, PR, for Defendant.

## OPINION AND ORDER

BRUCE J. McGIVERIN, United States Magistrate Judge.

Plaintiff Ovidio Negrón ("Negrón") seeks judicial review of the decision of the defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), finding that Cruz is not entitled to disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. § 423, as amended. (Docket No. 1). Cruz asks for judgment to be reversed, or in the alterna-

tive to remand the case to the Commissioner for further proceedings. Cruz filed a memorandum of law in support of his position. (Docket No. 19). The Commissioner answered the complaint (Docket No. 11) and filed a memorandum in support of his decision. (Docket No. 24). This case is before me on consent of the parties. (Docket No. 7). After careful review, this case is remanded for further proceedings.

## LEGAL STANDARD

■ The court's review is limited to determining whether the Administrative Law Judge ("ALJ") employed the proper legal standards and focused facts upon the proper quantum of evidence. *Manso–Pizarro v. Secretary of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir.1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999); *Ortiz v. Secretary of Health and Human Servs.*, 955 F.2d 765, 769 (1st Cir.1991). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodriguez Pagan v. Secretary of Health and Human Servs.*, 819 F.2d 1, 3 (1st Cir.1987). Written reports submitted by non-examining physicians who merely reviewed the written medical evidence are not substantial evidence, although these may serve as supplementary evidence for the ALJ to consider in conjunction with the examining physician's reports. *Irizarry—Sanchez v. Comm'r of Soc. Sec.*, 253 F.Supp.2d 216, 219 (D.P.R.2003). The

burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146–147, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." [1] 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

■ A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is disabled. 20 C.F.R. § 404.1520; *see also Bowen*, 482 U.S. at 140–42, 107 S.Ct. 2287; *Goodermote v. Secretary of Health and Human Servs.*, 690 F.2d 5, 6–7 (1st Cir.1982). In step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. 20 C.F.R. § 404.1520(b). If he is not, the ALJ proceeds to step two, and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. However, if the

---

1. The phrase "work which exists in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

impairment or combination of impairments is severe, the evaluation proceeds to the third step, in which it is determined whether the claimant has an impairment equivalent to a specific list of impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, where the ALJ determines whether the impairment prevents the claimant from doing the work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform this work, then the fifth and final step of the process asks whether the claimant is able to perform other work in the national economy in view of his residual functional capacity ("RFC"), as well as age, education, and work experience.[2] If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

■ The claimant has the burden, under steps one through four, of proving that he cannot return to his former employment because of the alleged disability. *Santiago v. Sec'y of Health and Human Servs.*, 944 F.2d 1, 5 (1st Cir.1991). Once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform. *Ortiz v. Sec'y of Health and Human Servs.*, 890 F.2d 520, 524 (1st Cir.1989).

## FACTUAL AND PROCEDURAL BACKGROUND

Negron was born on June 16, 1949. (Transcript ["Tr."] 93, 101). He completed the ninth grade. (Tr. 122, 159). He worked as a construction worker from 1981 to 2005 before allegedly becoming unable to work. (Tr. 38, 103–105). Negron claims to have been disabled since November 23, 2005 due to syncope (loss of consciousness) and ischemia. (Tr. 12, 14, 27, 93, 115). He was fifty-six years-old on the alleged onset date of disability.

Dr. Jose Ramirez, treating physician from 2001 to 2007, treated Negron for high blood pressure, pectoris angina, coronary artery disease ("CAD"), peripheral vascular disease, dyslipidemia, diabetes mellitus, and heart murmur with pharmacotherapy. (Tr. 118). He assessed that Negron has small vessel disease, angina pectoris, and dyspnea on exertion, and that his conditions were precipitated by exercise and stress. Negron's chest pain was moderate severe, radiated to the shoulders, and lasted from five to thirty minutes, and his impairments lasted or could be expected to last at least twelve months. Dr. Ramirez stated that the prognosis was guarded. (Tr. 15, 118, 178–190, 215).

Dr. Francisco Guzman, treating cardiologist from 2005 to 2007 for the same conditions treated by Dr. Ramirez (Tr. 118), performed an electrocardiogram on October 24, 2006, and found that Negron had ischemia. However, Dr. Guzman then performed on January 17, 2007 a gated myocardial perfusion study with stress ("stress test"), and the results were negative for ischemia. Dr. Guzman found that Neg-

---

**2.** An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limita-

tions from her impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1).

ron's left ventricular cavity was normal in size, with no perfusion defect throughout the let ventricular wall and ejection fraction of 66%. (Tr. 14, 118, 191–214).

Negron went to a hospital emergency room on four occasions. He visited Servicios Medical del Valle de Lajas on April 6, 2005 and was treated with pharmacotherapy for uncontrolled high blood pressure and angina pectoris. On June 3, 2005, he was treated at Hospital La Concepcion for uncontrolled high blood pressure with pharmacotherapy. On June 6, 2005, he was treated at Hospital Metropolitano for chest pain and uncontrolled high blood pressure with pharmacotherapy. He was also treated at Centro Medico de Mayaguez from November 30 to December 6, 2005 with pharmacotherapy for angina pectoris and CAD. A chest x-ray taken on November 30 revealed that the frontal view of the chest demonstrated no acute infiltrate or consolidation. The heart size was within normal limits, and no pleural effusion was seen. The clinical diagnosis was angina pectoric. (Tr. 118–120, 155–158).

Negron applied for a period of disability and DIB on March 28, 2007 (protective filing date).[3] (Tr. 12, 124, 127). He acquired sufficient quarters of coverage to remain insured through December 31, 2010. (Tr. 12, 101, 124).

In an undated disability report, Negron reported suffering from pectoris angina, CAD, peripheral vascular disease, dyslipidemia, diabetes mellitus, heart murmur, and high blood pressure. These conditions limited his ability to work because he had frequent chest pain, was dizzy, fatigued and tired, and got cramps and numbness in his legs. (Tr. 115). He stopped working because he could not bend, walk for more than five minutes because of his car-

diac conditions, and had to frequently change positions. (Tr. 116). Negron reported in a function report dated March 27, 2007 that he was forgetful and lacked concentration, that he did not prepare his own food because he could not concentrate, that his conditions did not allow him to sleep at night, do repairs around the house and practice sports, that he could not bend when getting dressed. He drove, occasionally left the house, and socialized. (Tr. 106–113).

Dr. Fernando Torres–Santiago, consultative internist for the Disability Determination Program ("DDS"), physically examined Negron on October 4, 2007. As to general appearance, Dr. Torres found Negron to have a normal constitution, was alert, well oriented, with normal memory, and in no acute distress. He was cooperative. Although he was using a walking cane, Dr. Torres observed that Negron did not limp and his gait and station were normal. Negron's heart had a regular rhythm with no murmur, clicks, or gallops. There was no evidence of limp or joint pain, swelling, heat or tenderness, and no muscle spasm or loss. Negron had normal peripheral pulses and circulation, and no evidence of heart insufficiency. The electrocardiogram and chest x-ray results were normal. Dr. Torres diagnosed costochondritis, a musculoskeletal condition, and assessed that Negron was not disabled on sitting, standing, walking, handling objects, hearing, or speaking, and recommended that he avoid carrying, lifting, pushing, and pulling more than ten to fifteen pounds frequently. (Tr. 15, 159–165).

At DDS's request, Dr. Ivan Arzola assessed on October 4, 2007 that Negron's conditions were not severe. (Tr. 166–167).

The Regional Commissioner denied Negron's application on October 26, 2007.

---

**3.** The application for social security benefits is dated May 15, 2007. (Tr. 93).

(Tr. 12, 42). In two undated appeal disability reports, although Negron reported not having new illnesses, injuries, or conditions since he last completed a disability report, he did state that he was suffering from frequent chest pain episodes that unable him from doing daily tasks. He could not walk, use stairs, or remain in the same position for long periods of time. (Tr. 138–144). Another function report, dated March 27, 2008, states that his conditions gave him chest and leg pain, weakness, insomnia, and anxiety, and that his medications made him dizzy and give him a headache. While a year before he reported being able to go out alone, in this report he stated that he could not go out alone because of his emotional condition, and that he did not like leaving his house. Also, the year prior he reported that he had trouble bending, and in this report he stated that his conditions additionally affected his ability to lift, squat, stand, reach, walk, sit, kneel, and climb. They also affected his memory, concentration, ability to understand, follow instructions, complete tasks, and get along with others, but he could socialize and handle funds. The year prior he did not report needing the assistance of equipment, and in this report he notified that he uses a cane to walk. (Tr. 130–137, 148–154).

On May 5, 2008, Dr. Francisco Rodriguez, another non-examining physician, reviewed the medical record, found no evidence of worsening or of new medical problems, and affirmed Dr. Arzola's assessment that Negron's conditions were not severe. (Tr. 168–169). The Regional Commissioner denied Negron's application upon reconsideration on May 6, 2008. (Tr. 12, 47).

Negron requested a hearing by an ALJ on June 24, 2008. (Tr. 50). The hearing was held on September 10, 2009. (Tr. 12, 20–39). A medical expert ("ME"), Dr. Jose Rolon, and a vocation expert ("VE"), Esperanza Distefano, testified. The ME testified that there was no evidence of a severe impairment in the medical record, and that Negron's conditions did not meet or equal in severity the requirements of the Listing of Impairments. (Tr. 33) The medical record of the treating cardiologist rebutted its own evidence of ischemia, and there was some evidence of syncopic episodes. (Tr. 28). The ME opined that Negron's conditions could be resolved with a bypass and anti-inflammatory medications. (Tr. 15, 29)

The VE testified that Negron's previous work as a construction worker was a very heavy exertional level unskilled job. The ALJ asked one question: if a person who is restricted to a maximum exertional level of light perform the previous work of the claimant. The VE testified that this person could not perform such work. (Tr. 38)

The ALJ issued a written decision on September 28, 2009 (Tr. 12–17) finding that Negron's conditions are not severe and have not lasted for twelve consecutive months, and therefore was not disabled under sections 216(i) and 223(d) of the Act. (Tr. 9, 16–17).

On November 18, 2009, Negron requested review of the ALJ's decision. (Tr. 7–8). On September 7, 2011, the Appeals Council denied the request. (Tr. 1). Negron appealed the ALJ's decision as the Commissioner's final decision.

## DISCUSSION

■ This court must determine whether there is substantial evidence to support the ALJ's determination at step two in the sequential evaluation process that Negron's physical impairment or combination of impairments was not severe, thus rendering him not disabled within the meaning of the Act. Negron argues that his impairments were more than slight, he

could not perform past relevant work, and therefore, the ALJ should not have stopped at step two but proceeded to the other steps, as per SSR 85–28 and *Andrades v. Secretary of Health and Human Services,* 790 F.2d 168 (1st Cir.1986).

Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Step two of the sequential evaluation process[4] demands a determination of whether a claimant has a severe impairment or combination of impairments that is severe, that is, that significantly limits or is expected to significantly limit the ability to perform basic work-related activities for twelve consecutive months. 20 C.F.R. § 404.1520(a)(4)(ii). Basic work activities are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting (SSR–85–28). *Id.*

The ALJ must first determine whether there is a physical or mental impairment that can reasonably be expected to produce the claimant's pain or other symptoms. The ALJ must then determine whether the intensity, persistence, and limiting effects of the claimant's symptoms limit his ability to do basic work activities. In this case, the ALJ first determined that Negron has syncope and ischemia, and that these conditions could reasonably be expected to produce the alleged symptoms. (Tr. 14, 17). The ALJ then found that Negron's statements concerning the intensity, persistence, and limiting effects of his symptoms were inconsistent with the finding that he does not have a severe impairment or combination of impairments that limits his ability to do basic work activities for twelve consecutive months. (Tr. 15–17).

"The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." SSR 85–28. As stated by the ALJ, "[a]lthough two treating physicians stated that claimant is limited to less than light work, there is no evidence that any of the claimant's conditions have lasted or can be ex-

---

4. "At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.)" 20 C.F.R. § 404.1520(a)(4)(ii).

"You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience. However, it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment." 20 C.F.R. § 404.1520(c).

pected to last 12 months. According to the medical expert's testimony the claimant had syncope (blackouts) and ischemia, but only on a few occasions or for a short period of time. Therefore, there is no medical basis to formulate a residual functional capacity that indicates claimant's capacity for a period of 12 months." (Tr. 15). As to the ischemia, Dr. Guzman performed an electrocardiogram with positive results on October 24, 2006, but three months later a gated myocardial perfusion study with stress revealed negative results for ischemia. The ME testified that this condition can improve spontaneously, a bypass may be performed if it is due to an obstruction, and imposing physical limitations may avoid the production of a blood vessel spasm. Negron's left ventricular cavity was normal in size, with no perfusion defect throughout the let ventricular wall and ejection fraction of 66%. (Tr. 14; Exhibit "Exh" 7F). There is no other evidence in the record of ischemia. (Tr. 30–32). As to the syncope, the ME testified that he found evidence in the record of three syncopic episodes. (Tr. 28). There is evidence of two episodes, but the third was reported by Dr. Torres with no other evidence in the record. (Tr. 28, 36). The ME also testified that ischemia can lead to a syncope. (Tr. 35). As to the angina pectoris and syncope, the ALJ found that the chest x-ray taken on November 30, 2005 showed no acute infiltrate or consolidation, the heart size was within normal limits, and no pleural effusion was detected. The catherization performed on December 5, 2005 revealed no obstructions. (Tr. 14; Exh 1F). As to other conditions, although Negron reported being diabetic, there is no medical evidence on record, and he controls high blood pressure with medication. (Tr. 15, 31). There is no evidence of a mental condition. (Tr. 33).

However, the ALJ does not mention in the decision the VE's testimony that Negron's former job as a construction worker was a very heavy exertional level job, and that a person whose maximum exertional ability is light would not be able to perform Negron's previous work. SSR 85–28 states that:

> In the absence of contrary evidence, it is reasonable to conclude that an individual whose impairments do not preclude the performance of basic work activities is, therefore, able to perform his or her past relevant work. If the medical evidence establishes only a slight abnormality(ies) which has no more than a minimal effect on a claimant's ability to do basic work activities, but evidence shows that the person cannot perform his or her past relevant work because of the unique features of that work, a denial at the "not severe" step of the sequential evaluation process is inappropriate. The inability to perform past relevant work in such instances warrants further evaluation of the individual's ability to do other work considering age, education and work experience.

As per SSR 85–28, there is evidence in the record that Negron may not be able to perform past relevant work. Lifting, walking, standing, and sitting are basic work activities. Heavy work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(d). Dr. Ramirez, treating physician, assessed that Negron would never be able to lift and carry fifty pounds, could occasionally lift and carry twenty pounds, and ten pounds frequently. (Tr. 181). He also assessed that Negron could stand or walk for less than two hours in an eight hour working day, sit for about two hours, and needed an assistive device for walking. (Tr. 180). Dr. Torres, consultative physician, also recommended upon examination that Negron avoid carrying, lifting, push-

ing, and pulling more than ten to fifteen pounds frequently. Although the issue of Negron's ability to perform past relevant work was brought up at the hearing in the form of a hypothetical question, the ALJ did not address the matter in the decision.

I am not expressing an opinion as to whether Negron's impairments are severe as defined by 20 C.F.R. § 404.1520(c). The function of weighing evidence and determining if a person meets the statutory definition of disability is the Secretary's. 20 C.F.R. § 404.1527(d). However, upon review of the record, the issue of whether Negron is able to perform past relevant work is undeveloped. "If [Negron] is in fact disabled from performing his past work, a denial of benefits at the Step 2 level would not be appropriate in any event." *Andrades,* 790 F.2d at 171.

## CONCLUSION

For the foregoing reasons, the case is remanded for further development of the record. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**